In re Ernest Gordon GODFREY, Sr., Individually and d/b/a Auto Mart of Montgomery and d/b/a Auto Mart Transportation, Bankrupt.

James H. EVANS, District Attorney, Fifteenth Judicial Circuit of Alabama, Appellant,

v.

Ernest Gordon GODFREY, Sr., Individually and d/b/a Auto Mart of Montgomery and d/b/a Auto Mart Transportation, Appellee.

Civ. A. No. 79–10–N.

United States District Court, M. D. Alabama, N. D.

June 11, 1979.

ber 28, 1978, by Bankruptcy Judge Rodney R. Steele. Before reaching the issues presented by this appeal, it is necessary to review the prior history of this case in some detail. On March 3, 1978, Ernest Gordon Godfrey, Sr., individually and doing business as Auto Mart of Montgomery and as Auto Mart Transportation, filed a voluntary petition of bankruptcy. At that time he filed a schedule of his debts, and listed the following, among others, as creditors having unsecured claims without priority: P. W. Echols (Echols), Capitol Motor Company (Capitol), Brewbaker Buick (Brewbaker), Neil Huffman Volkswagen Corporation (Huffman), and McConnell Dodge, Inc. (McConnell). On March 9, 1978, the bankruptcy judge entered an order setting March 20 as the first meeting of creditors and April 19 as the deadline for filing complaints objecting to the discharge of the bankrupt and complaints seeking a determination of the dischargeability of any debts. A copy of this order was mailed to each creditor listed by Godfrey. On April 19, two creditors—but none of the creditors named above—requested an extension of time for filing complaints to determine dischargeability and discharge. An extension was granted and one creditor filed a complaint in May.

Though notices had been mailed to all Godfrey's creditors, including Echols, Capitol, Brewbaker, Huffman, and McConnell, these five creditors filed no complaints with the bankruptcy court alleging that Godfrey's debts to them were non-dischargeable and filed no objections to his discharge. Earlier Echols, Brewbaker, Huffman, and McConnell had brought actions in the District Court of Montgomery County, Alabama, against Godfrey for issuing worthless checks. After a hearing on March 24, 1978, the state district court judge dismissed the charges relating to Brewbaker, Huffman, and McConnell. On the same day Echols dismissed five worthless check charges against Godfrey. The state proceedings did not terminate then, however. These creditors, or their agents, testified against God-

H. Lewis Gillis, Deputy Dist. Atty., Fifteenth Judicial Circuit of Alabama, Montgomery, Ala., for appellant.

Carl O. Pilgrim, Montgomery, Ala., for appellee.

## MEMORANDUM

JOHNSON, District Judge.

James H. Evans, District Attorney for the Fifteenth Judicial Circuit of Alabama, has appealed the order entered on Novem-

frey before the state court grand jury.[1] On July 18, 1978, the grand jury returned nine indictments against Godfrey alleging that he had violated the Alabama Worthless Check Act, Ala.Code § 13–4–110 through 122 (1975), by drawing eleven checks without sufficient funds on deposit or credit and with the intent to defraud. These checks totaled approximately $31,000. The amount of each check corresponded to a check Godfrey had given to one of the five creditors named above—Echols, Capitol, Brewbaker, Huffman, and McConnell. The witnesses through whom the state proposed to prove its case were principals or agents of these five creditors.

At this point Godfrey sought a temporary restraining order and a preliminary injunction against the district attorney, James H. Evans, and the five creditors to prevent the prosecution of the charges referred to in the indictments. After a hearing at which testimony was presented by agents of the creditors and by an investigator from the office of the district attorney, the bankruptcy judge concluded that the district attorney was prosecuting these charges in good faith and not for any unlawful purpose. The bankruptcy judge found that the creditor complaining witnesses, however, had taken out warrants or testified before the grand jury for the purpose of collecting the bad checks Godfrey had issued to them. He further noted that if a bankrupt were convicted of uttering bad checks and sentenced to make full restitution to the complaining witnesses this would conflict with an order of the bankruptcy court discharging the bankrupt of his debts. Accordingly, he entered the following order on August 28, 1978: (1) he denied Godfrey's motion to enjoin the district attorney from continuing the pending criminal prosecution; (2) he issued a permanent injunction restraining Godfrey from paying and Huffman, McConnell, Brewbaker, Capitol, and Echols from receiving any sum of money in satisfaction of the debts represented by the bad checks which were the basis of the pending criminal action.

On September 1, 1978, Godfrey filed a notice of appeal of the August 28 order. He withdrew his appeal on October 18. No other party appealed.

On September 8, 1978, the bankruptcy court granted a discharge to Godfrey.

On October 10, 1978, Godfrey entered a guilty plea to the nine worthless check charges in the Circuit Court of Montgomery County. On October 27, he was sentenced to two years' imprisonment in each case, but the sentence was suspended and he was placed on probation on the condition that he pay a total of $31,000 in restitution at the rate of $200 per month.

Subsequent to the sentence, James H. Evans, the district attorney, filed a motion on October 31, 1978, seeking to amend the injunction which had been entered on August 28. He sought to have lifted the order restraining Huffman, McConnell, Brewbaker, Capitol, and Echols from receiving payment in satisfaction of the worthless checks; he also sought to have the bankruptcy proceeding reopened and the debts represented by the worthless checks designated as non-dischargeable. He based his motion on the discovery of "new evidence not heretofore discoverable by due diligence on behalf of all defendants." The "new evidence" was the guilty plea entered by Godfrey on October 10, 1978.

On November 9, 1978, Godfrey filed an opposition to the motion submitted by Evans and also filed his own motion seeking "relief and protection." In support of his motion Godfrey alleged that prior to sentencing he had informed the circuit court judge of the injunction entered by the bankruptcy court prohibiting him from paying restitution and his creditors from receiving it. He sought to enjoin the judge who had sentenced him and all the other judges of the Fifteenth Judicial Circuit of Alabama from (1) requiring him to pay restitution as a condition of his probation,

---

1. The bankruptcy judge found that some of them also had taken out warrants against Godfrey, but did not indicate when this occurred.

and (2) revoking his probation for failure to pay restitution. He also sought to have the bankruptcy court review the terms and conditions of his sentence, asserting that eighteen years' probation was excessive and was imposed solely to require restitution of the whole amount of $31,000.[2] Additionally, he alleged that the motion filed October 31, 1978, by Evans was an attempt to harass Godfrey into paying restitution, and sought to enjoin Evans from further attempts to secure restitution of Godfrey's debts which had been discharged in bankruptcy.

On November 28, 1978, the bankruptcy judge entered an order denying the motions of Evans and Godfrey. In the order he ruled that Evans had no standing to seek the determination of the dischargeability of the debts of Godfrey. He based that ruling on the statutory provision which specifies that a bankrupt or a creditor may file an application to determine the dischargeability of a debt. Further he ruled that no new evidence had been presented. He pointed out that the indictments had already been returned when the August hearing was held and the injunction entered prohibiting repayment of discharged debts. He noted that in prosecuting the case the district attorney had to be prepared to prove all the elements of the crimes with which Godfrey had been charged. Thus, he concluded, the guilty plea did not produce new evidence, but rather made presentation of proof of the crimes unnecessary. He further ruled that even if Godfrey's guilty plea were evidence in the form of an admission of intent to defraud, this evidence fell short of that required to render a debt non-dischargea-

ble. He based that ruling on an examination of the intent to defraud required by the Worthless Check Act of Alabama, Ala. Code § 13–4–118 (1975), and the intent to defraud required by the non-dischargeability section of the Bankruptcy Act, 11 U.S.C. § 35(a)(2) (1976). He concluded that the requisite intent was different in each, noting that the bankruptcy act requires a "specific positive intent to cheat or swindle" and "a fraud in fact and not one implied in law," whereas the worthless check act concerns a "technical statutorily defined [offense]" in which "the fraud is implied." Order of November 28, 1978, at 3–4.

The bankruptcy judge reiterated that the district attorney had represented that in prosecuting the criminal charges against Godfrey he had no interest in seeking collection of any debts, but simply intended to vindicate the worthless check laws of Alabama.[3] However, the bankruptcy judge recognized that the 1977 amendment to the worthless check act requires a judge to order a person convicted under that statute to make full restitution to the complaining parties. Ala.Code § 13–4–123 (Supp.1978). Although the Alabama statute requires restitution, the bankruptcy judge nevertheless ruled that restitution—if it required this bankrupt to pay to his creditors, the complaining witnesses, the same amount he owed them stemming from the debts which had been discharged in the bankruptcy proceeding—would impermissibly interfere with the order of discharge which had been entered in this case on behalf of the bankrupt. Accordingly, he held that in order to protect the integrity of the bankruptcy pro-

---

**2.** Godfrey noted that he was sentenced to two years' imprisonment in each of nine cases, but that the sentences were to run concurrently. He was placed on probation for two years in each case, but the sentencing judge directed that the probation terms run consecutively. Godfrey asserted that the eighteen year probation period was imposed solely to force him to pay restitution of $31,000. He protested the excessive length of his probation, and stated that a two year suspended sentence was reasonable in his case.

**3.** The bankruptcy judge observed that the Supreme Court of Alabama, in upholding the con-

stitutionality of the worthless check act, specifically stated that it would be an unconstitutional application of the statute to employ it to collect a civil debt. *Tolbert v. State,* 294 Ala. 738, 321 So.2d 227, 232 (1975). He observed further that the worthless check act allows a judge to impose monetary punishment on a violator by providing for stiff fines "payable to the State of Alabama as a vindication to all of the people of the State for the breach of their laws." Order of November 28, 1978, at 6. According to the bankruptcy judge, the fines permitted by the statute in this case could have ranged from $5,500 to $55,000.

ceedings the injunction entered in August, 1978, prohibiting the bankrupt and his five creditors from paying or receiving any sum of money in satisfaction of the debts represented by the bad checks which were the basis of the criminal charges must remain in full force and effect.

On December 8, 1978, Evans, the district attorney, petitioned for review of the November 28, 1978, order of the bankruptcy judge. He designated two issues on appeal: (1) whether the bankruptcy court erred in holding that there is no new evidence which would support a modification of the injunction entered by the bankruptcy court dated August 28, 1978; (2) whether the newly discovered evidence as alleged by the district attorney established a false pretense or false representation as set out in the bankruptcy act. In his brief, however, appellant Evans only addresses the first issue.

In support of his position Evans asserts that the guilty plea entered by Godfrey constitutes new evidence because the plea is proof of his intent to defraud "beyond all doubt, not merely beyond a reasonable doubt." Brief for Appellant at 4. Additionally, he alleges that Godfrey revealed he had a specific positive intent to cheat or swindle by stating when he entered his pleas that at the time he issued the checks he knew he did not have sufficient funds on deposit or enough credit with the bank.[4] Appellant concedes that the five creditors involved in this case did not at any time—before or after the deadline—raise the question of the dischargeability of the debts and that there is no apparent reason why they should be able to do so now in an untimely fashion.[5] He contends, however, that the bankruptcy judge on his own should have reopened the determination of

disc:hargeability once he was notified of the guilty plea. In conclusion, appellant argues that even if there is no new evidence and even if the intent to defraud required by the non-dischargeability section of the bankruptcy act is absent the bankruptcy judge should dissolve the injunction on equitable grounds.[6]

Appellee Godfrey responds by asserting that appellant, who is neither a creditor nor a bankrupt, has no standing to file a complaint objecting to the discharge or to seek a determination of the dischargeability of debts. He reasserts that the guilty plea does not constitute new evidence, that proof of the intent to defraud required by the worthless check act does not in itself suffice to preclude the dischargeability of a debt in bankruptcy, and that appellant's argument that the injunction should be lifted so that a creditor can be compensated for his loss indicates that appellant's purpose in this case is to use the criminal process to collect debts discharged in bankruptcy. Accordingly, he requests the affirmance of the order entered by the bankruptcy judge on November 28, 1978.

Although the parties have made numerous and diverse arguments and counterarguments concerning various aspects of bankruptcy law which the bankruptcy judge has carefully addressed in his opinions and orders, and despite the fact that lurking behind the matters which have been raised is the specter of conflict between a state statute and the federal bankruptcy law, appellant's petition presents this Court with only a narrow issue for review: does the guilty plea entered by the bankrupt, Ernest Gordon Godfrey, Sr., on October 10, 1978, constitute new evidence which would

4. There is no evidence in the record before this Court concerning statements made by Godfrey when he entered his guilty plea on October 10, 1978.

5. The five creditors have not joined with Evans in his motion to modify the injunction and his petition for review, nor have they sought a determination of non-dischargeability.

6. He specifies the following equitable grounds: (1) the discharge allows the bankrupt to be free

of "debts which were the subject of crimes admitted to . . . while the creditors suffer the loss of the debts"; (2) the discharge assists a violator of the law and the injunction allows him to escape the lawful sentence issued by the state court; and (3) the injunction, at the least, should be modified "so that the one creditor who has not received compensation for his loss would be allowed to do so." Brief for Appellant at 5.

support a modification of the injunction entered by the bankruptcy court on August 28, 1978? Appellant, of course, contends that it does and that the injunction should be dissolved, thus permitting Echols, Capitol, Brewbaker, Huffman, and McConnell to receive restitution totaling $31,000, the amount of the eleven checks which were the basis of the criminal prosecution in Montgomery County Circuit Court. Implicit in appellant's petition, and partially articulated by him, is his belief that the debts represented by the eleven worthless checks are not properly dischargeable under the bankruptcy laws. While his belief is understandable, it is based on a misconception of the bankruptcy laws.

Before reaching the merits, it is necessary to address the preliminary issue of standing. Appellee Godfrey asserts that appellant Evans has no standing.[7] Evans has not addressed the issue of standing. The Court notes that Evans is peripheral to this litigation. It is true that in August, 1978, Godfrey sought to enjoin Evans from proceeding with the criminal prosecution, but Godfrey was unsuccessful. In his November, 1978, motion for "relief and protection" Godfrey again sought to enjoin Evans, as well as all the judges of the Fifteenth Judicial Circuit, from requiring him to pay restitution, but Godfrey again was unsuccessful. The bankruptcy court has not restricted the actions of Evans in any way. By its terms the injunction which the bankruptcy judge issued extends only to Godfrey and his five creditors. Evans has advanced no reason why he should be permitted to assert the rights of those who are bound by the injunction, the creditors and Godfrey. One of the basic tenets of the standing doctrine is that an individual must assert his own legal interests rather than those of third parties. *Gladstone v. Village of Bellwood,* —— U.S. ——, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Tileston v. Ullman,* 318

U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). It appears to the Court that in the case at bar Evans has not observed that tenet. While it is true that under some exceptions to the standing rule an individual can protest an injury to another, *cf. NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (if individuals assert the right they forfeit the protection of the right); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (an organization can litigate the scope of the constitutional protection for its members to act collectively); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (a doctor can raise the rights of his patient when a criminal prosecution is involved and the doctor can be charged as an accessory), Evans does not fall within any of these categories.

Although silent on this point, it is possible that Evans bases his standing to seek to modify the injunction on his office. He believes, perhaps, that as district attorney he has an interest in contesting an order which may interfere with a condition of probation set by a circuit court judge. With regard to this theory, the Court notes that the constitutional limits on standing are well known: one must show he has suffered "a distinct and palpable injury to himself," *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), which is likely to be redressed if the requested relief is granted. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Applying this standard to Evans, the Court concludes that he has failed to show he personally has suffered some actual or threatened injury as a result of the injunction which he seeks to modify and, therefore, lacks standing.

---

7. Godfrey also contends that the motion submitted by Evans is untimely in that it was filed more than ten days after the injunction was entered in August. Evans, however, has characterized his motion for modification of the injunction as one based on newly discovered evidence. It is axiomatic that injunctions may be modified in light of significant changes in circumstances. *System Federation No. 91, Ry. Emp. Dept., AFL–CIO v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961). Evans alleges a significant change has occurred. Thus, his motion is not untimely.

Even if he had standing, Evans would not be successful on his appeal. This is so because he misconceives the nature and the operation of the bankruptcy laws. In passing the Bankruptcy Act, 11 U.S.C. §§ 1–1103 (1976), the primary purpose of Congress was to give debtors " 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–1711, 29 L.Ed.2d 233 (1971), *quoting Local Loan Company v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). To a certain extent Congress limited the relief afforded by providing that a discharge in bankruptcy shall not release a bankrupt from certain kinds of debts. 11 U.S.C. § 35. Among the debts not affected by a discharge are "liabilities for obtaining money or property by false pretenses or false representations." *Id.* § 35(a)(2).

Thus, the bankruptcy laws distinguish between a general discharge in bankruptcy and the dischargeability of certain debts incurred by the bankrupt. A discharge does not absolve the bankrupt of all his debts; rather it absolves him of all his debts other than the ones determined to be not dischargeable. In 1970 Congress amended the Bankruptcy Act to place in the bankruptcy court the exclusive jurisdiction for determining the dischargeability of debts. The amendment is explicit as to the procedure which must be followed:

A *creditor* who contends that his debt is not discharged under [the false pretenses or false representations clause] must file an application for a determination of dischargeability *within the time fixed* by the court . . . *[U]nless an application is timely filed, the debt shall be discharged.* *Id.* § 35(c)(2) (emphasis added).

This procedure, which was adopted after careful attention to the purpose and effect of the Bankruptcy Act, *see* H.R.Rep. No. 91–1502, 91st Cong., 2d Sess. 2 (1970), reprinted in 1970 U.S.Code Cong. & Admin. News, pp. 4156, 4156–66, clearly places the burden on *the creditor* to object that a debt owed to him by the bankrupt should not be discharged. The statute clearly contemplates that potentially non-dischargeable debts—including those involving false pretenses or false representations—will be discharged *if the creditor chooses not to object.* Under the statutory scheme there is no place for a district attorney to enter the bankruptcy proceeding—well after the creditors had received notice of the time fixed for filing objections to the discharge of debts, had declined to file objections, had let the deadline come and go without a murmur—and protest that the debts should not have been discharged because they involved false pretenses.[8] Indeed, the courts have stated that if a creditor's complaint challenging dischargeability is not timely filed within the original period or any extension which may have been granted, there is a mandatory dismissal of the objections and the bankruptcy court has no jurisdiction to consider the complaint. *Matter of Love,* 577 F.2d 345, 346 (5th Cir. 1978). Surely, if a creditor's untimely application cannot be considered, then a non-creditor's untimely objection must be denied.

■ Further, even if Evans were the proper party to raise the issue of non-dischargeability, the fact that the bankrupt entered a guilty plea to an offense under the state worthless check statute is not in

---

8. It is true that in some instances the court may revoke a discharge "upon the application of a creditor, the trustee, the United States attorney, or any other party in interest, who has not been guilty of laches" if the discharge was obtained through the fraud of the bankrupt or if the bankrupt received property and fraudulently failed to report it to the trustee or if the bankrupt refused to obey a lawful order of the court. 11 U.S.C. § 33. None of these circumstances applies to the case at hand.

In certain other instances, such as when creditors did not receive notice of the proceedings, *see Recile v. Ward,* 496 F.2d 675 (5th Cir. 1974), or when a creditor failed to file a timely complaint through inadvertence or mistake, *see In re Boissonault,* 415 F.2d 1371 (1st Cir. 1969); *Keenan v. Builders Appliances, Inc.,* 384 F.Supp. 14 (E.D.Wis.1974), the bankruptcy court can set aside a discharge or allow the late filing of an objection to discharge, but this case does not present such a situation.

itself a sufficient basis on which to rule that the debts should not have been released by the discharge. Because the exclusive jurisdiction to determine dischargeability is vested in the bankruptcy courts, a state court judgment on the debt in question does not have collateral estoppel effect. *In re Houtman,* 568 F.2d 651, 653 (9th Cir. 1978). Rather the bankruptcy court must consider all relevant evidence and make an independent determination. *Id.* at 654; *In re Blessing,* 442 F.Supp. 68 (S.D.Ind.1977); *In re Mountjoy,* 368 F.Supp. 1087, 1096–97 (W.D.Mo.1973).

Thus, the Court concludes that the bankruptcy judge did not err in ruling that the guilty plea entered by the bankrupt did not constitute new evidence which would justify a revocation of the discharge, a determination that certain debts are non-dischargeable, and a modification of the injunction entered by the bankruptcy court on August 28, 1978. His order must be affirmed.