**In the Matter of Marvin Augustus DAVIS, Jr., Linda Dale Davis, Debtors.**

**Marvin Augustus DAVIS, Jr., Linda Dale Davis, Plaintiffs, Appellants,**

v.

**Donald SHELDON, d/b/a C. N. C. Insurance Company, Carlton Walls, d/b/a Manlove Automotive Services, Inc., Dana G. Lane, d/b/a U. L. Harmon Company, and Richard S. Gebelein, Attorney General, State of Delaware, Defendants, Appellees.**

No. 81–522.

United States District Court,
D. Delaware.

March 15, 1982.

Eric M. Doroshow, Wilmington, Del., for appellants/debtors.

Richard J. McMahon, Dept. of Justice, Wilmington, Del., for appellee, State of Delaware.

## OPINION

STAPLETON, District Judge.

This appeal from the judgment of the United States Bankruptcy Court for the District of Delaware, 15 B.R. 442, pits the jurisdiction of the Bankruptcy Court to enforce the discharge provisions of the Bankruptcy Code against the power of the State to prosecute violations of its criminal laws. The Plaintiffs, Marvin Augustus Davis, Jr., and Linda Dale Davis, were discharged in bankruptcy on July 28, 1981. Among the former obligations which the Davises included in their bankruptcy petition, and which were extinguished by the order of discharge, were debts owed to U. L. Harmon, Inc., C.N.C. Insurance Company, and Manlove Automotive Services, Inc. The Davises had paid each of these debts with checks issued from an account which lacked sufficient funds to cover the withdrawals. Harmon, Manlove and C.N.C. instituted criminal proceedings in Justice of the Peace Court, alleging violations of 11 *Del.C.* § 900(2).[1] After filing for bankruptcy, the Plaintiffs sought an injunction against these prosecutions, contending that the mandatory restitution provision of 11 *Del.C.* § 4206(a)[2] would impair the effect of their discharge in bankruptcy. The criminal proceedings, which are now before the Court of Common Pleas, have been stayed by agreement pending resolution of the issues presented in this appeal. The Attorney General of Delaware has represented that he will seek convictions on the criminal charges as soon as the stay is lifted, and will insist that a restitution order be included in the final judgment of the Court of Common Pleas.

Two questions are before me: (1) does the Bankruptcy Court have jurisdiction to enjoin the criminal actions against the Davises? and (2) if so, did the Bankruptcy Court abuse its discretion in refusing to issue an injunction?

### I

Section 362 of the Bankruptcy Code imposes an automatic stay of "the commence or continuation ... of a judicial, administrative, or other proceeding against the debtor ... to recover a claim against the debtor that arose before the commencement of the case under this title" effective upon the filing of a petition in bankruptcy. 11 U.S.C. § 362(a)(1) (in relevant part). Section 362(a) is subject to several exceptions. Under 11 U.S.C. § 362(b)(1), the filing of a bankruptcy petition does not operate to stay "the commencement or continuation of a criminal action or proceeding against the debtor." The language of this section is free from ambiguity. Whatever the motive of those who initiated the criminal prosecution, Section 362 does not operate to stay any criminal proceedings. *In re Taylor*, 16 B.R. 323 (Bkrtcy.D.Md.1981).

The fact that criminal proceedings are not automatically stayed under Section 362, however, does not imply that the Bankruptcy Court is without power to intervene in criminal actions where such intervention is necessary to preserve the jurisdiction of the Bankruptcy Court, and to effectuate the provisions of the Code. 11 U.S.C. § 105 confers broad powers on the Bankruptcy Court, which parallel the All Writs Act's

---

1. U. L. Harmon filed two criminal complaints on April 13, 1981. Plaintiffs filed their Chapter 7 petition on April 14, 1981. C. N. C. filed its criminal action in Justice of the Peace Court on May 13, 1981, and Manlove on April 28, 1981. Plaintiffs filed a schedule of creditors including Harmon with their petition, and an amended schedule listing Manlove and C. N. C. on June 17, 1981. The Bankruptcy Court issued its discharge order on July 28, 1981.

2. 11 *Del.C.* § 4206(a) provides:

The sentence for a Class A misdemeanor shall be fixed by the court and shall not exceed 2 years imprisonment and such fine or other conditions as the court may order; provided, however, that the court shall require a person convicted of issuing a worthless check under § 900 of this title to make restitution to the person to whom the worthless check was issued.

grant of authority to federal courts to issue writs in aid of their jurisdiction.[3]

The exemption of criminal proceedings from the automatic stay provision is consistent with the Congressional policy of deference to State criminal jurisdiction. *See 2 Colliers on Bankruptcy* ¶ 362.05[1] (15th ed. 1979); *In re Button*, 8 B.R. 692, 693 (Bkrtcy.W.D.N.Y.1981); *In re Kaping*, 13 B.R. 621, 623 (Bkrtcy.D.Or.1981). "The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R. 95–595, 95th Cong. 1st Sess. (1977), S.R. 95–989, 95th Cong. 2d Sess. (1978), *reprinted in* [1978] *U.S.Code Cong. & Admin.News* at 5787. However, most of the courts which have discussed the issue have concluded that Bankruptcy courts retain the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including an injunction against a criminal prosecution. 11 U.S.C. § 105(a). *See In re Kaping, supra; In re Caldwell*, 5 B.R. 740, 742 (Bkrtcy. D.W.Va.1980); *In re Taylor, supra; In re C. H. Stuart*, 12 B.R. 85, 87 (Bkrtcy.W.D.N.Y. 1981); *In re Lake*, 11 B.R. 202, 204–205 (Bkrtcy.S.D.Ohio 1981); *In re Reid*, 9 B.R. 830, 832 (Bkrtcy.M.D.Ala.1981); *In re Barth*, 4 B.R. 141, note 6 at 143 (Bkrtcy.W. D.Mo.1980). I agree that this interpretation of the Code is persuasive.

## II

■ Although I have concluded above that a United States Bankruptcy Court has the lawful power to enjoin State criminal proceedings, the language of Section 362(b)(1), its legislative history, and the line of authority developed under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d

669 (1971) counsel the sparing exercise of that power. *See 2 Colliers on Bankruptcy* ¶ 362.05[1] (15th ed. 1979) at 362–37; *In re Taylor, supra.*

*Younger*, which teaches abstention from interference with State criminal proceedings, has swollen in recent years to engulf a variety of civil and administrative proceedings as well. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child custody proceeding); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt); *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil enforcement of obscenity statute); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil attachment to recover wrongful welfare payment); *Williams v. Red Bank Bd. of Education*, 662 F.2d 1008 (3d Cir. 1981) (tenure review hearing).[4] For that reason, it is immaterial whether the mandatory restitution provision is regarded as "quasi-criminal", "quasi-civil," or as a civil appendage to a criminal prosecution. It is, in any event, "in aid of and closely related to criminal statutes." *Huffman v. Pursue, supra*, 420 U.S. at 604, 95 S.Ct. at 1208.

Plaintiff-Appellants argue that the intentions of the creditors who filed these actions and who prosecuted them in Justice of the Peace Court until their removal to the Court of Common Pleas are decisive. Under the Davis's theory, if a creditor initiates a criminal prosecution for the purpose of obtaining a preference from a bankrupt debtor, the prosecution should be enjoined because it threatens the integrity of the bankruptcy laws. In the first place, this test would be difficult to apply, and would involve the court in matters entirely unrelated to the discharge of the debtor. More significantly, however, the State—wisely or not—has authorized such prosecutions.

---

3. Although I need not currently decide this issue, it appears that the jurisdiction to issue such an injunction which lies in the Bankruptcy Court may be exercised only by district judges. *See* Bankruptcy Act of 1978, P.L. 95–598, 92 Stat. 2549 (1978) § 405(a)(1)(A), which governs the transition period before amended 28 U.S.C. § 1481 takes effect on April 1, 1984.

4. Of course, *Younger's* very malleability may be a sign of an underlying theoretical weakness. *See* Soifer and MacGill, *The Younger Doctrine: Reconstructing Reconstruction*, 55 Tex.L.Rev. 1141 (1977).

And in this case, the only one before me for decision, the State has assumed control of the prosecutions itself. At this point, all of the interests identified in *Younger* are present in this case as well.

A remaining question is whether the State court provides a forum in which Plaintiffs may raise the federal rights they have asserted here. The State maintains that the mandatory restitution provision, 11 *Del.C.* § 4206(a), gives the sentencing judge no discretion, and that he or she must award restitution in the cases involving Mr. and Mrs. Davis. The issue, however, is not discretion, but the effect of the discharge in bankruptcy and the Supremacy Clause of the United States Constitution. The essence of the Davis's position is that 11 *Del.C.* § 4206(a) cannot constitutionally be applied to this situation because, to do so, would defeat two fundamental objectives of the Bankruptcy Act: the rehabilitation of the debtor through a "clean slate discharge, and the equitable distribution of assets among similarly situated creditors.[5] Insofar as the Davises seek to avoid an order of restitution, as opposed to complete immunity from prosecution, their position raises substantial Supremacy Clause issues.

Their argument, however, is one which can and should be made in the first instance to the Court of Common Pleas and, if necessary, on appeal from its judgment. The opportunity to urge this argument in the state proceedings is adequate under the test enunciated in *Garden State Bar Ass'n v. Middlesex County Ethics Comm.*, 643 F.2d 119 (3d Cir.), *reh. denied*, 651 F.2d 154 (3d Cir.), *cert. granted*, —— U.S. ——, 102 S.Ct. 500, 70 L.Ed.2d 377 (1981) and *Williams v. Red Bank Bd. of Education, supra*.[6]

Nor is this an exceptional case requiring immediate federal intervention. As noted, there are two federal policies embodied in the Bankruptcy Code, which the criminal prosecutions against Mr. and Mrs. Davis implicate. These federal interests, although important, do not warrant immediate injunctive relief. There is no reason to believe that Congress intended the discharge provision of the Code to confer an immunity to prosecution for frauds committed before the date of bankruptcy. Accordingly, there is no federal interest served by preventing the State from going forward with its prosecution of the Davises for issuing worthless checks. The potential conflict between the Bankruptcy Code and the sentencing provisions of the Delaware Code arises only if the State obtains a conviction, and the Court imposes a sentence of restitution notwithstanding Plaintiffs' assertion of their federal rights. I cannot presume that either result will take place, and will therefore abstain under *Younger*.

### III

For the reasons herein stated, the judgment of the Bankruptcy Court will be affirmed.

---

**5.** 11 U.S.C. § 727 permits the discharge of a debtor from all debts incurred before the order for relief, except when the debt is one of a limited class which are non-dischargeable. The Defendants in this case did not object to discharging the Davises, and, under federal law, their claims for any monies owed prior to April 14, 1981 are extinguished by the discharge.

Section 726 of Title 11 sets forth the procedure for the distribution of the assets of the debtor's estate. Section 726(a)(2) provides for a pro rata distribution among the class of unsecured creditors who have filed timely claims.

Post-discharge restitution would, it is asserted, have the effect of creating a substantial preference for the sub-class of unsecured creditors whose claims arise from worthless checks.

**6.** *Younger* is a doctrine of abstention in favor of pending state proceedings, but also contemplates an eventual federal forum. A sentence of probation conditioned on making restitution is considered "custody" for purposes of release through federal habeas corpus. *See U.S. ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 423 (3d Cir. 1975).