### In re HERMAN HASSINGER, INC., Bankrupt.

### HERMAN HASSINGER, INC. and Daniel O. Berdahl, Plaintiffs,

v.

### Paul DERKOTCH, Defendant.

### Bankruptcy No. 74–677G.

United States Bankruptcy Court, E. D. Pennsylvania.

June 2, 1982.

Robert Szwajkos, Rubin, Quinn, Moss & Girard-DiCarlo, Philadelphia, Pa., for plaintiffs, Herman Hassinger, Inc. and Daniel O. Berdahl.

Todd E. Blumenfeld, Land Title Building, Philadelphia, Pa., for defendant, Paul Derkotch.

Fred Zimmerman, trustee.

Lawrence J. Lichtenstein, Sklar, Lichtenstein & Sklar, Philadelphia, Pa., for trustee, Fred Zimmerman.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before the court is whether we should enjoin the continuation of a criminal action in the state courts brought by a creditor against the president of the bankrupt corporation for allegedly issuing a bad check. We conclude that the state criminal proceeding should be enjoined because we find that the real motive behind that prosecution is to collect the debt owed to the creditor by the bankrupt and that to allow a continuation of that action would unduly interfere with the administration of the bankrupt's estate.

The facts of the instant case are as follows: [1] On August 14, 1974, Herman Hassinger, Inc. ("the bankrupt") filed a petition for an arrangement under chapter XI of the Bankruptcy Act ("the Act").[2] By order of this court, dated May 29, 1981, the bankrupt was adjudicated a bankrupt. For several years prior to that date, Daniel O. Berdahl ("Berdahl") was president of the bankrupt. As part of his duties, Berdahl issued wage checks to the bankrupt's employees. Paul Derkotch ("Derkotch") was one of the employees of the bankrupt until the date it was adjudicated.

On November 16, 1981, Derkotch caused a criminal complaint to be filed against Berdahl in the Philadelphia Municipal Court for allegedly issuing three bad payroll checks to Derkotch prior to the date of adjudication. Berdahl subsequently filed a complaint to enjoin Derkotch from continuing with his criminal action. We entered a temporary restraining order and later a preliminary injunction prohibiting Derkotch from proceeding with the criminal action pending our decision as to the propriety of a permanent injunction.

At the subsequent hearing held herein, Derkotch testified that his motive in going to see the district attorney and in causing the criminal complaint to be issued was to get his money.[3] In addition, restitution is a common remedy in the type of criminal proceeding which Derkotch has in-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

3. There was also conflicting testimony as to the knowledge and motive of Berdahl at the time

he issued the payroll checks. While that testimony is relevant to the issue of whether Berdahl is guilty under the bad check statute—*see* 18 Pa.Cons.Stat.Ann. § 4105 (Purdon)—we conclude that it is irrelevant to the issue of whether a creditor should be permanently enjoined from prosecuting a criminal action against the former president of the bankrupt corporation. *Cf. In re Alan I. W. Frank Corp.,* 19 B.R. 41 (Bkrtcy.E.D.Pa.1982), and cases cited therein.

stituted.[4] Consequently, we conclude that permitting Derkotch to continue with that criminal action could result in his obtaining a preferential payment of the debt owed to him by the bankrupt corporation. Such a result would unduly interfere with the administration of the bankrupt's estate and would frustrate the purposes of the Bankruptcy Act which are the orderly and equal distribution of the assets of the bankrupt's estate. Therefore, we conclude that it is within our power under § 2(a)(15) of the Act[5] to permanently enjoin Derkotch from continuing his criminal action against Berdahl, the former president of the bankrupt corporation.[6]

---

4. See, e.g., In re Alan I. W. Frank Corp., 19 B.R. at 45 n.11 (Bkrtcy.E.D.Pa.1982); In re Strassmann, 18 B.R. 346, 347 (Bkrtcy.E.D.Pa.1982).

5. Section 2a(15) of the Act provides:

a. The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: Provided, however, That an injunction to restrain a court may be issued by the judge only.

11 U.S.C. § 11(a)(2) (repealed 1978).

6. See generally, 1 Collier on Bankruptcy ¶ 2.62[4] at 339–41 (14th ed. 1981) and cases cited therein.