In re Ronald L. HOLDER, Debtor.

Ronald L. HOLDER, Plaintiff,

v.

Guy DOTSON, Jr. and Roddy L. Moore, d/b/a Moore's Market, Defendants.

Bankruptcy No. 381–02547.
Adv. No. 382–0406.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 28, 1982.

Steve C. Norris, Nashville, Tenn., for debtor.

Larry G. Trail, Murfreesboro, Tenn., for defendant, Roddy L. Moore.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was initiated by the debtor Ronald L. Holder's complaint requesting this court to permanently enjoin the defendants Roddy L. Moore and District Attorney General Guy Dotson, Jr., of Rutherford County, Tennessee, from continuing criminal prosecutions of the debtor under Tennessee's "bad check" statute.[1] On July

---

1. Tenn.Code Ann. § 39–1959 (Supp.1981) provides:

"*Drawing check or order without sufficient funds unlawful.*—It shall be unlawful for any person with fraudulent intent to make or draw or issue or utter or deliver any check, draft or order for the payment of money drawn on any bank, corporation, firm or person for the purpose of obtaining money, services, or any article of value, or to obtain credit, knowing at the time of making, drawing, uttering or delivering said draft, check or

order that the maker, or drawer, has not sufficient funds in, or on deposit with, such bank, corporation, firm or person, for the payment of such check, or draft, or order in full, and all other checks, drafts or orders upon such funds then outstanding."

The penalties for violation of these provisions are defined by Tenn.Code Ann. § 39–1966 (1975 S.Supp.1981):

"... Any person violating §§ 39–1959— 39–1965 upon conviction shall be punished as follows:

8, 1982, the court granted the debtor's application for a temporary restraining order and, on July 30, 1982, the court imposed a preliminary injunction which prohibited the defendants from pursuing the aforementioned criminal proceedings. The court is now confronted with the issue of whether this injunction should be made permanent. Upon consideration of the evidence presented at the hearing, stipulations, exhibits and the entire record, this court concludes that the debtor's complaint for a permanent injunction should be denied.

The following shall represent findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtor filed a Chapter 13 petition in this court on August 10, 1981. Prior to that time, the debtor had been a regular customer of Moore's Market which was owned and operated by the defendant Roddy L. Moore. From August of 1980 to May of 1981, the debtor wrote approximately 18 checks to Moore's Market that were subsequently returned because of insufficient funds in the debtor's checking account. Moore would inform the debtor when a check was returned and the debtor would usually either come to Moore's Market and pay the check or place money in his account to cover the check.

At the time of the filing, the debtor owed Moore approximately $140.81, which amount included several checks returned to Moore because of insufficient funds in the debtor's checking account. The debtor initially failed to list either Roddy Moore or Moore's Market as a creditor in his bankruptcy schedules. On February 15, 1982, the debtor received a letter from Moore's attorney demanding payment. The debtor thereafter sought to amend his schedules to add several creditors, including Moore's Market. On March 16, 1982, the court ordered that this application would be granted if no objections were filed on or before April 27, 1982. This order became final when no objections were filed. The debtor has proposed in his Chapter 13 plan to pay 100% of Moore's Market's unsecured claim.

On April 7, 1982, Moore initiated criminal proceedings against the debtor for the issuance of four allegedly bad checks in the total amount of $70.00.

These insufficient funds' checks represented part of the debt to Moore's Market which the debtor had just included in his Chapter 13 schedules. When Moore instituted these criminal proceedings, he was required by the Rutherford County District Attorney General's office to complete a questionnaire routinely submitted to any person seeking a criminal warrant for a worthless check. This document specifically asked Moore if he clearly understood that he was "requesting a CRIMINAL, not a CIVIL warrant, and that the purpose of a criminal warrant is solely to prosecute one for committing a crime, and not to collect the amount of the check." Moore responded by writing "yes" after this question.

The debtor has now commenced this adversary proceeding to enjoin the defendants from continuing these criminal prosecutions pursuant to this court's recent decision in *Whitaker v. Lockert*, 16 B.R. 917 (Bkrtcy.M. D.Tenn.1982).[2] In *Whitaker*, the court

(a) When the amount for which the check, draft, or order is drawn is for an amount not exceeding one hundred dollars ($100), it shall be punishable upon conviction as a misdemeanor by confinement in the county jail or workhouse for not more than eleven (11) months and twenty-nine (29) days or fine not exceeding five hundred dollars ($500), or both in the discretion of the court or jury.

(b) When the amount for which the check, draft, or order is drawn or where the combined amount of more than one check, draft, or order, or any combination thereof, is for more than the words one hundred dollars

($100), it shall be punishable by confinement in the penitentiary for not less than three (3) years nor more than ten (10) years.

(c) In addition to either of the punishments prescribed in paragraph (a) or paragraph (b), as appropriate, the court shall require the convicted person to pay to the holder of the check, draft or order the amount due thereon."

2. The automatic stay provisions of § 362 do not prevent the continuation of this state criminal proceeding. 11 U.S.C. § 362(b)(1) (West 1979) expressly provides that the stay does not apply to the "commencement or continuation

found that a criminal proceeding instituted under Tennessee's bad check statute should be permanently enjoined on the basis that (1) the underlying debt represented by the checks had been discharged in the debtor's bankruptcy proceeding more than a year prior to the initiation of the criminal proceeding, (2) the Tennessee bad check statute was customarily used as a collection device by dissatisfied creditors, (3) the creditor in the instant case had initiated the criminal prosecution solely to recover a discharged debt and (4) the debtor, who had been told by the prosecuting attorney that the criminal charges would be dropped if the debtor agreed to provide full restitution to the creditor, would be irreparably harmed by the continuation of the criminal proceeding since, prior to seeking relief from the bankruptcy court, he could have paid the discharged debt and thereby avoided the cost and anxiety of the criminal prosecution. *See also Deneau v. Lockert,* Case No. 381–03368, Adv. No. 382–0006, slip op. at 6–7 (Bkrtcy.M.D.Tenn. March 15, 1982). The totality of the circumstances in *Whitaker* necessitated the issuance of a permanent injunction of the criminal proceeding in order "to effectuate the judgment of the bankruptcy court." *Whitaker v. Lockert,* 16 B.R. at 922. Several other courts have also concluded that state criminal prosecutions can be enjoined under similar circumstances. *See, e.g., Ohio Waste Services, Inc. v. Fra-Mar Tire Services, Inc.,* 23 B.R. 59, 60–61 (Bkrtcy.S.D.Ohio 1982); *Herman Hassinger, Inc. v. Derkotch,* 20 B.R. 517, 518–519 (Bkrtcy.E.D.Pa.1982); *Alan I.W. Frank Corp. v. P.M.A., Inc.,* 19 B.R. 41, 42–44 (Bkrtcy.E.D.Pa.1982); *Strassmann v. Du-Art Foods, Inc.,* 18 B.R. 346, 347 (Bkrtcy.E.D.Pa.1982); *Trail West, Inc. v. South Dakota,* 17 B.R. 330, 332 (Bkrtcy.D.S. D.1982); *Taylor v. Widdowson,* 16 B.R. 323, 325–327 (Bkrtcy.D.Md.1981); *Johnson v. Lindsey,* 16 B.R. 211, 212 (Bkrtcy.M.D.Fla. 1981); *Barnett v. K-Mart,* 15 B.R. 504, 507–511 (Bkrtcy.D.Kan.1981); *Kaping v. Oregon,* 13 B.R. 621, 623 (Bkrtcy.D.Or.1981).

of a criminal action or proceeding against the

■ A federal court should nevertheless be extremely hesitant to intervene in a state criminal prosecution. As this court noted in *Whitaker,* a federal court's power to interfere with state criminal proceedings is narrowly circumscribed and such interference is only justified when the evidence clearly and convincingly reflects that the criminal proceeding is primarily intended to collect a civil debt in contravention of either the automatic stay or discharge provisions of the Bankruptcy Code. *Whitaker v. Lockert,* 16 B.R. at 923 n. 8. This court's power to enjoin state criminal prosecutions should only be exercised in extraordinary circumstances, such as those exemplified in the *Whitaker* case.

■ The factors enunciated by this court in *Whitaker* are simply not present in this case. The debts at issue have not been discharged nor does the evidence indicate that either the creditor or the prosecuting attorney is attempting to utilize the criminal process to collect the underlying debts. The creditor Moore testified that he was not attempting to recover the debts when he swore out a criminal warrant against the debtor and that he instituted this criminal proceeding because he felt that "people are not supposed to write bad checks." Moore's testimony is corroborated by his response to the written questionnaire routinely submitted to anyone seeking to commence a criminal bad check prosecution in Rutherford County. In that questionnaire, Moore affirmed that he clearly understood he was requesting a "CRIMINAL, not a CIVIL warrant, and that the purpose of a criminal warrant is solely to prosecute one for committing a crime, and not to collect the amount of the check." This proof conclusively demonstrates that both the creditor and the prosecuting attorney are not using the criminal process to obtain restitution.

The court would note that the creditor himself is prohibited from accepting any restitution ordered pursuant to § 39–1966(c) of the Tennessee Code as a result of

debtor."

the pending criminal prosecutions.[3] This court has previously held that § 39–1966(c), which requires a person convicted under Tennessee's bad check statute to make full restitution, is unconstitutional to the extent that it conflicts with the provisions of federal bankruptcy law. *Whitaker v. Lockert,* 16 B.R. at 921; *Manier v. Tennessee,* Bankr. L.Rep. (CCH) ¶ 68,670 (1980). In particular, this court has found that § 39–1966(c) is unenforceable against a debtor who has submitted himself to the jurisdiction of this court by filing a Chapter 13 petition designed to either fully or partially satisfy the underlying debt which is the subject of the criminal prosecution. *Manier v. Tennessee,* Bankr.L.Rep. (CCH) ¶ 68,670, at 80,717. The imposition of restitution under such circumstances would not only contravene the rehabilitative purpose of Chapter 13 but would also permit the state to indirectly enforce a debt which "could not be enforced directly by the creditor in either a state or federal court." *Whitaker v. Lockert,* 16 B.R. at 921. If the provisions of § 39–1966(c) were operative against a debtor who is subject to the jurisdiction of this court, then unscrupulous creditors would be encouraged to employ the criminal process as leverage to force the immediate repayment of civil debts and thereby avoid the effect of the federal bankruptcy laws.[4]

This court is aware of at least two decisions which have concluded that a court could require restitution as a condition of probation even where such restitution constituted partial repayment of a debt previously discharged in a bankruptcy proceeding. *United States v. Carson,* 669 F.2d 216, 216–218 (5th Cir.1982); *In re Button,* 8 B.R. 692, 694 (Bkrtcy.W.D.N.Y.1981); *See also Arizona v. Magnifico,* 21 B.R. 800, 802–803 (Bkrtcy.D.Ariz.1982). These cases are, however, inapplicable to this proceeding. Tennessee's restitution provision is much more pervasive than the court's discretionary imposition of restitution as a condition of probation. Section 39–1966(c) of the Tennessee Code *requires* that anyone convicted under Tennessee's bad check statute must *pay the entire amount due* on the worthless check in question. The court has no discretion in this matter and the debtor receives no *quid pro quo* for this enforced restitution. The penalty is simply imposed in addition to the fine and/or imprisonment which can also be assessed against the convicted offender. The Fifth Circuit at least insinuated that this type of restitution might not pass muster when it commented that "[I]f the principal aim of the probation condition were to make the bank whole, this argument [that the court should prohibit the imposition of restitution] might have some appeal." *United States v. Carson,* 669 F.2d at 217.

In conclusion, this court would reiterate its opinion that this statute may run afoul of Article I, Section 18, of the Tennessee Constitution which prohibits imprisonment for civil debt. *Whitaker v. Lockert,* 16 B.R.

---

**3.** As an aside, the court would observe that the debtor has proposed 100% payment of these unsecured claims in his Chapter 13 plan.

**4.** This court recognizes the Third Circuit's recent decision declining to address this identical constitutional question on the grounds that, if necessary, the debtors could assert their federal bankruptcy rights in the state court criminal proceeding as a defense to the mandatory imposition of restitution. *Davis v. Sheldon,* 691 F.2d 176 (3d Cir.1982), *aff'g* 18 B.R. 701, 704 (D.Del.1982), *aff'g,* 15 B.R. 442 (Bkrtcy. D.Del.1981). This court finds no reason to impose such a stringent requirement on the debtor in this case, especially in light of this court's prior decision finding Tennessee's mandatory restitution statute unconstitutional in a similar context. Furthermore, Congress' enactment of the Bankruptcy Code granted debtors certain rights and protections which this court is obligated to enforce. These protections would include the nullification of a statute such as § 39–1966(c) which contravenes the jurisdiction of this court and is susceptible to being utilized as a device to pressure the debtor into repayment of a prepetition debt. This court should provide a ready forum to remedy any interference with a debtor's rights under the federal bankruptcy laws. Finally, requiring the debtor to raise these identical issues in the state court when the issues are already before this court would result in a duplication of effort which could possibly hinder the debtor's potential fresh start. This court therefore finds no reason to compel the debtor to submit this constitutional defense at the state court criminal proceeding.

at 922 n. 7. Penalties for violation of a criminal bad check statute should necessarily be limited to public fines and/or imprisonment. Section 39–1966(c) in essence creates a private remedy for a public wrong and, as a result, Tennessee's bad check statute has to a large extent evolved into a public debt collection system. *See Whitaker v. Lockert,* 16 B.R. at 922. State taxpayers should not bear the cost of what are essentially civil prosecutions to collect dishonored checks. The Eleventh Circuit Court of Appeals recently emphasized, in concluding that bankruptcy courts should be extremely hesitant to interfere with state criminal prosecutions, that the "purpose of bankruptcy is to protect those in financial, not moral, difficulty." *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir. 1982). By the same token, this court firmly believes that criminal statutes should be designed to redress public, not private, wrongs. An action for the repayment of a wrongfully dishonored check should therefore be left exclusively to the province of civil courts.

The court accordingly will enter an order denying the debtor's complaint for a permanent injunction of the criminal proceedings in question and enjoining the creditor from accepting any restitution pursuant to § 39–1966(c) of the Tennessee Code which may be imposed as a result of these criminal proceedings. The court will further order that this injunction shall become permanent upon the completion of the debtor's Chapter 13 plan.

IT IS, THEREFORE, SO ORDERED.