**In re Beatrice GOREE, Debtor.**

**Beatrice GOREE, Plaintiff,**

**v.**

**J. Bruce MILLER, Steve Johnson, Thomas J. Knopf and Robert Schilling, Defendants.**

**Bankruptcy No. 38001860.**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 15, 1985.

Algernon W. Tinsley, Louisville, Ky., for plaintiff.

Wallace H. Spalding, Jr., Louisville, Ky., trustee.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

This action comes back to us under an order of remand entered by the United States District Court for the Western District of Kentucky. After due consideration of various complex issues which have arisen from the seemingly simple discharge of a small debt, this court holds that, under the facts of the case, we will abstain from enjoining a Kentucky criminal proceeding against the debtor under the doctrine of *Younger v. Harris.*[1]

The facts of this case are simple and undisputed. In March of 1979 the debtor, Beatrice Goree, pleaded guilty in Jefferson District Court to a charge of unemployment insurance benefits fraud. Defendant the Honorable Thomas J. Knopf was the presiding judge at the debtor's trial. Judge Knopf sentenced the debtor but allowed probation, conditioned upon her making restitution to the Bureau of Social Insurance (BSI). The debtor began to make the required repayments.

On June 28, 1980 the debtor filed her bankruptcy petition. In her petition she properly listed her debt to the BSI as one of the debts to be discharged.[2] In January, 1981, this court granted the debtor's petition and discharged those debts which she listed in her bankruptcy petition, including the BSI debt. Neither the County Attorney[3] nor the BSI contested the dischargeability of the debt at the time.

The debtor, relying on the discharge granted by this court, ceased making her monthly restitution payments to the BSI. Over two years after the debtor was granted a discharge, on or about September 26, 1983, the BSI informed the debtor that unless she repaid her debt to the bureau, her probation would be revoked and she would serve a seven-month jail sentence. The present action by the debtor for injunctive relief shortly followed.

\* \* \* \* \* \*

■ Before we can consider the merits of the debtor's motions, we must first decide the threshold question of whether this court should abstain from interfering with a state criminal proceeding.[4] Although it is clear that a United States Bankruptcy Court has both the jurisdiction and the lawful power to enjoin a state court crimi-

---

1. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

2. We find that the defendant's contention that they failed to receive proper notice of the debtor's bankruptcy petition is without merit.

3. The court notes that there is a serious question as to the standing of the county attorney to challenge the discharge of the BSI debt. *See In re Godfrey,* 472 F.Supp. 364 (M.D.Ala.1979). Due to our disposition of this case, however, we need not decide this issue.

4. The *Younger* line of cases primarily deals with requests for Federal Courts to enjoin state criminal proceedings. In this particular case the debtor requests that we find the defendants in contempt of court and that we issue a "cease and desist order". This relief sought by the debtor is the functional equivalent of an injunction, and therefore the reasoning of the *Younger* line of cases is directly applicable.

nal proceeding,[5] the principles of federalism and comity developed by the landmark case of *Younger v. Harris* and its progeny[6] dictate the sparing use of this power.[7]

■ Under the *Younger* line of authority, a federal court may enjoin a state criminal prosecution only in a case of "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown."[8] The reasoning behind the doctrine was clearly set forth in *Younger,* with Justice Black delivering himself of a virtual civics lesson:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.[9]

■ In this case the debtor has failed to demonstrate either that the criminal proceedings now pending against her were

---

5. *Matter of Davis,* 691 F.2d 176 (3rd Cir.1982); *In re Barnette,* 673 F.2d 1250 (11th Cir.1982); *In re Penny,* 414 F.Supp. 1113 (W.D.N.C.1976); *In re Lake,* 11 B.R. 202 (Bkrtcy.S.D.Ohio 1981). *See also In re Goree,* 46 B.R. 697 (W.D.Ky.1984).

6. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Kluger v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).

7. *Matter of Davis,* 691 F.2d at 178; *In re Barnette,* 673 F.2d at 1252; *In re Whitaker,* 16 B.R. 917 (Bkrtcy.M.D.Tenn.1982).

8. *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

9. *Younger v. Harris,* 401 U.S. at 43–46, 91 S.Ct. at 750–752.

instituted in bad faith or that "other extraordinary circumstances" exist which would cause her great immediate and irreparable injury.[10] It is true that the debtor faces the possibility of being imprisoned for failing to pay a debt which was lawfully discharged by this court.[11] However, the Supreme Court ruled in the *Younger* case that the "cost, anxiety, and inconvenience" of defending oneself in a good faith criminal proceeding does not constitute irreparable injury.[12]

■ This court has every reason to believe that the Commonwealth of Kentucky's court system will give the debtor a full and fair opportunity to vindicate her rights. Both this court and the Federal District Court for the Western District of Kentucky have clearly ruled on the status of the BSI debt under the facts of this case.[13] Further hearings on the matter before this court would serve no useful purpose.[14] The debtor has made no allegation that the Kentucky court system has inadequate procedures for hearing her federal defense to the threatened revocation of her probation, or that the Kentucky court system lacks in any way the capacity to adequately adjudicate this issue.

In conclusion, we note that the concept of Federalism in this country relies on the proper functioning of the separate court systems. For each system to continue to serve as an effective forum for the preservation of individual rights and societal interests, each must respect the other's integrity and sphere of jurisdiction. Federal courts must remain vigilant not to diminish the rightful prerogatives of their state counterparts and must enjoin state criminal proceedings *only* when proper cause has been shown.[15] By the same token, state courts cannot disregard the obligations imposed upon them through the operation of the Supremacy Clause of the United States Constitution. The latter duty serves to reassure us that the state court will accord proper respect to the affirmative defense of the bankruptcy discharge.[16]

For the above reasons, the court ABSTAINS from the within proceeding.

---

**10.** According to *United Transportation Union v. Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971), the burden is on the debtor. For an example of "extraordinary circumstances" see, *Flynt v. Leis,* 574 F.2d 874 (6th Cir.1978).

**11.** The BSI debt was discharged, without objection, on January 8, 1981. To this date, the defendants in this action have failed to raise a proper objection to this debt's dischargeability. *See In re Goree,* 46 B.R. at 698–99.

**12.** *Younger v. Harris,* 401 U.S. at 46–47, 91 S.Ct. at 751–752.

**13.** *See In re Goree,* 46 B.R. 697. Judge Allen's memorandum thoroughly explored the facts of the case and the policy considerations, including abstention, for this court to entertain on remand.

**14.** A *Younger* abstention is doctrinal in nature, rooted in broad policy grounds, and need not be the subject of notice and a hearing. Abstention on such a summary basis does no indignity to due process requirements; rather, the exercise of the power is specifically predicated on the

assumption that the affected party will in fact receive a full, fair hearing on the merits in state court. In this important respect a *Younger* abstention differs markedly from that which may be obtained under either of two bankruptcy statutes, 28 U.S.C. § 1334 (mandatory abstention, district courts) and 11 U.S.C. § 305 (permissive abstention, bankruptcy courts). Neither statute permits appellate review.

**15.** *See Matter of Davis,* 691 F.2d at 179–80.

**16.** *Cf. Kugler v. Helfant,* 421 U.S. at 127, 95 S.Ct. at 1532. We finally note that while *Younger* is a doctrine of abstention in favor of pending state proceedings, it also contemplates an eventual federal forum. *See Matter of Davis,* 691 F.2d at 179 n. 7; *U.S. ex rel. Wojtycha v. Hopkins,* 517 F.2d 420, 423 (3rd Cir.1975); *Matter of Davis,* 18 B.R. 701 (D.Del.1982). In the *Davis* case, the Third Circuit noted that "[d]epending on the state court disposition, the Davises may be able to challenge an erroneous state decision in federal court through habeas corpus (28 U.S.C. § 2254), a declaratory judgment action (28 U.S.C. § 2201), an action under 42 U.S.C. § 1983, or an appeal to the Supreme Court." *Davis,* supra, at n. 7.