In re Storm Archer ALLMAN, aka Storm A. Allman, aka Storm A. Allman, II, aka Storm W. Archer Allman, aka Storm W. Archer, Individually and as an Officer, Director and Shareholder of the S.G.R. Company, Inc., and B & A Consumer Products, Inc., and dba Trust Investment Company, Debtor.

Storm Archer ALLMAN, Plaintiff,

v.

MERIT BRASS COMPANY and Mr. John T. Corrigan, Cuyahoga County Prosecutor, Defendants.

Bankruptcy No. 83 B 00545 G.
Adv. No. 84 C 0038.

United States Bankruptcy Court, D. Colorado.

Sept. 4, 1984.

---

Thomas Terry, Jeff Bayless, Cleveland, Ohio, for the Cuyahoga County Prosecutor.

Milnor H. Senior, III, Denver, Colo., for Storm Archer Allman.

Stephen M. Bailey, Denver, Colo., for Merit Brass Company.

## FINDINGS, CONCLUSIONS AND ORDER ON MOTION FOR PERMANENT INJUNCTION

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is a motion for permanent injunction filed by the debtor, Storm Archer Allman, and directed against the defendants, Merit Brass Company (Merit Brass) and John T. Corrigan, Cuyahoga County Prosecutor (Prosecutor), Cuyahoga County, Ohio. The debtor requests this Court to permanently enjoin Merit Brass and the Prosecutor from continuing to prosecute him for the offenses of passing bad checks and grand theft. The debtor contends that this Court has the authority to enjoin the Ohio State Court prosecution where the action seeks to collect by criminal process a debt discharged in bankruptcy proceedings. The debtor further requests that this Court find that Merit Brass was in contempt of court when it caused the criminal proceeding to go forward and that accordingly Merit Brass should be liable for all expenses incurred by the debtor in his criminal defense. The defendants assert that this Court lacks the authority to enjoin a state court criminal prosecution unless the debtor first shows that the criminal proceeding was instituted in bad faith. Merit Brass additionally contends that it cannot be held in contempt of court for instituting these criminal proceedings where it did not learn of the bankruptcy proceeding until after the criminal complaint was filed.

The facts are as follows. The debtor and his partner, Michael Buchholz, operated a business known as B & A Consumer Products (B & A), a Colorado corporation. B & A marketed a product which was designed to dispense bath oil through the shower-head. B & A contracted for the manufacture of this product with Kelltek Plastics (Kelltek). Brass fittings for the dispenser were ordered from Merit Brass for delivery to Kelltek. The product consisted of an injected molded plastic bottle which was attached to a brass fitting referred to as a nipple. The brass fitting was simply screwed into the plastic bottle without alteration.

In the summer of 1982 the debtor contacted Merit Brass's Denver sales representative about purchasing quantities of the brass fittings. After a series of discussions B & A entered into a purchase agreement on August 16, 1982. Merit Brass invoices indicate that 20,000 of the nipples were shipped in two deliveries in late September and early October of 1982. The contract price for the nipples was 70 cents per unit, or a total price of $14,000. B & A made no payment to Merit Brass at the time that either of these shipments were made.

In late September of 1982, subsequent to the time that the first shipment was made, Richard Mehnert, Merit Brass's national sales manager, came to Denver. Mr. Mehnert met with the debtor, Mr. Buchholz, Jerry Ellifson, the president of Kelltek, Gus Danos, the Colorado distributor for Merit Brass, and another individual identified in the testimony as a vendor. Mr. Mehnert testified that he spoke with the debtor about the possibility of Merit Brass selling B & A's product through Merit Brass's national marketing program and requested that B & A "hold off" on further efforts to market the product until Mr. Mehnert could talk to his manufacturer's representatives. The debtor testified that at the time of this meeting, he believed that K-Mart Stores was about to place a large purchase order for the product. The debtor stated that both he and Mr. Ellifson told Mr. Mehnert that it would be necessary for B & A to sell its product and to factor the resulting receivables before any payment could be made to Merit Brass.

In late October of 1982 after the second shipment the debtor and Mr. Buchholz received a conference call from Mr. Mehnert. The debtor testified that Mr. Mehnert told him at that time that Mr. Mehnert had two bona fide, qualified buyers in the Cleveland area who wanted to buy all of B & A's inventory. Mr. Mehnert also requested that the debtor bring a check payable to Merit Brass when he came to meet the buyers. There is a direct conflict in the evidence as to Mr. Mehnert's representations about this proposed payment. The debtor testified that Mr. Mehnert told him he would hold the check until after the bath oil dispensers were shipped and B & A had the opportunity to take the resulting invoices to Commercial Factors of Denver. The debtor further testified that he told Mr. Mehnert in three separate conversations held prior to his visit that any check given to Merit Brass could not be made good until the products were shipped and the accounts receivable were factored. The debtor's testimony was corroborated by Mr. Buchholz. Mr. Buchholz testified that during the conference call with Mr. Mehnert, prior to the trip to Cleveland, he asked Mr. Mehnert if orders would be placed as a result of the trip. According to Mr. Buchholz, Mr. Mehnert told him that there were buyers. Mr. Buchholz testified that he was concerned about the debtor making the trip because the company's financial condition was so bad that Mr. Buchholz himself was paying for the debtor's flight to Cleveland. Mr. Buchholz testified that later in the same conversation he heard the debtor tell Mr. Mehnert that if the products were not sold, the check would not be good.

The debtor testified that, based upon Mr. Mehnert's representations, he traveled to Cleveland. The debtor gave Merit Brass a check for $14,000 dated November 1, 1982 after Mr. Mehnert insisted that Merit Brass receive the check before the debtor's meeting with the potential buyers. Mr. Mehnert did not disclose the identity of the purported buyers until the check was written. According to the debtor, Mr. Mehnert promised him that the check would be held until B & A had sufficient funds to cover the check. The debtor testified that the two individuals described by Mr. Mehnert as buyers turned out to be a police sergeant who was moonlighting and another person on the police force who provided security services for Merit Brass. No purchase orders were placed.

Mr. Mehnert's testimony was in marked conflict with that of the debtor. Mr. Mehnert testified that prior to the November 1, 1982 meeting he told the debtor that he had a couple of people interested in buying B & A's product. Mr. Mehnert stated that he made no guarantee to the debtor that these individuals would buy the product. Mr. Mehnert further testified that he received the check without conditions. Merit Brass deposited the check from B & A on approximately November 5, 1982. The check was returned for insufficient funds. Mr. Mehnert testified that Merit Brass made one effort to collect the $14,000 obligation subsequent to the time that the check was returned. On December 17, 1982, Mr. Mehnert purportedly sent a letter to the debtor requesting that the $14,000 check be made good. Merit Brass did not offer a copy of this letter into evidence. The debtor testified that he did not receive any such letter.

The debtor testified that subsequent to his trip to Cleveland he learned that the manufacturer's representative hired by B & A had misrepresented that purchase orders for the product existed. The debtor stated that he then wrote a letter dated November 15, 1982, in which he told Mr. Mehnert about the misrepresentations and asked that Merit Brass continue to hold the November 1 check. A copy of the letter was introduced into evidence by the debtor. The letter made no mention of any bankruptcy proceeding. The debtor filed a bankruptcy petition under Chapter 13 on November 12, 1982. The debtor testified that he only scheduled personal and not corporate obligations in his Chapter 13 proceeding. Merit Brass was not included as a creditor in the debtor's Chapter 13 Statement because the debtor did not consider B & A's debt to Merit Brass to be a personal

obligation at that time. The debtor testified that he told Mr. Mehnert during a subsequent telephone conversation some time in November that he was filing bankruptcy. Mr. Mehnert testified that he never received the November 15, 1982 letter and that he had no telephone conversations with the debtor concerning the bankruptcy filing.

On February 10, 1983, the debtor's Chapter 13 proceeding was voluntarily dismissed because the debtor's potential obligations, including B & A's debts, exceeded the statutory limits for Chapter 13. On the same day the debtor filed a petition under Chapter 7 which included the $14,000 debt owed to Merit Brass. Mr. Mehnert testified that he turned over B & A's $14,000 insufficient funds check to the Cuyahoga County Prosecutor's office on February 11, 1983. This statement was not corroborated by any evidence presented by the defendants. On February 28, 1983, the debtor wrote a second letter to Merit Brass. This letter discussed the debtor's Chapter 7 filing and made reference to the fact that Merit Brass was still holding the $14,000 check. This letter was also introduced into evidence. On April 5, 1983, the State of Ohio issued an indictment signed by the foreman of the Ohio grand jury and by the prosecuting attorney charging the debtor with issuing a negotiable instrument with the purpose of defrauding Merit Brass.

The debtor testified that he first became aware of the existence of the indictment when he received a summons on approximately April 21, 1983 to appear before the Cuyahoga County Court on April 18, 1983, which was three days earlier. Upon receiving the summons the debtor obtained local counsel, James Wollrab of Boulder, to arrange for his surrender to Ohio authorities in Boulder. Subsequent to that time, the debtor obtained counsel in Cleveland, Jerome Weiss, and in June of 1983 flew to Cleveland to appear before the Cuyahoga County Court. The debtor posted bond and was released. On July 19, 1983, the debtor obtained a discharge in bankruptcy. At no time did Merit Brass challenge the dischargeability of its $14,000 debt nor did it object to the debtor's discharge. The debtor's Ohio counsel, Jerome Weiss, filed a motion to dismiss the state court indictment with the Cuyahoga County Court in August of 1983 alleging that the criminal prosecution could not continue because of the debtor's bankruptcy discharge. The motion to dismiss was summarily denied. On November 14, 1983, the debtor filed a motion for an order restraining the criminal prosecution as a part of his underlying Chapter 7 proceeding. Judge Gueck summarily denied the debtor's motion on the procedural ground that the debtor had not filed the action as an adversary proceeding. On November 28, 1983, the debtor again returned to Cleveland. The next day the debtor was present at a dispositional hearing where he pled guilty to a first degree misdemeanor. The guilty plea required the debtor to make restitution to Merit Brass for the $14,000 check within six weeks of the hearing date. The debtor originally pled not guilty to the two-count indictment for the fourth degree felony offenses of passing bad checks and grand theft.

The debtor testified to the circumstances underlying his guilty plea. He stated that his criminal attorney, Mr. Weiss, advised him that if he did not plead guilty he would be incarcerated in Ohio. The Cuyahoga County Court had rejected the debtor's defense based upon his bankruptcy discharge when it denied his motion to dismiss. Additionally, the debtor testified that he was unable to insure the attendance of various witnesses that he felt were necessary for his defense because those individuals resided outside the State of Ohio and were unwilling to attend the Ohio court proceedings. Mr. Buchholz, his partner, was unable to attend any proceedings in Ohio because a physical disability, multiple sclerosis, precluded him from traveling. After Judge Gueck's ruling, it was the debtor's understanding that some definitive action by the Ohio court in the nature of ordering restitution would be necessary before this Court would act. The debtor testified that at the time he pled guilty to the lesser offense, he intended to make every effort

to repay Merit Brass or to return the brass fittings, but that his financial difficulties precluded any payment. As a result of criminal prosecution, the debtor incurred expenses of over $17,000. The Court received no testimony from the prosecutor's office concerning the substance of its investigation prior to prosecuting the debtor. The Cuyahoga County Court, despite notice of the debtor's discharge in bankruptcy, proceeded with the criminal prosecution and ordered the debtor to make restitution to Merit Brass. The present status of the state court proceeding, as represented to this Court by Thomas Terry of the Cuyahoga County Prosecutor's office, will be determined by a motion made to the Ohio Court by the Prosecutor. Depending upon the motion made, the court may vacate the previously entered plea, reinstate the indictment, and go to trial or withdraw the debtor's probation and sentence him to six months in jail.

The issue presented is whether this Court can permanently enjoin a state court criminal action for the passing of a bad check where the state court prosecution continues after the debt underlying the check was discharged in a bankruptcy proceeding. A number of peripheral issues are also presented. The Court must necessarily determine whether the debtor's parole can be revoked where that parole was conditioned upon the debtor's payment of a debt discharged in bankruptcy. Additionally, this Court must decide whether a creditor was in contempt of Court when it instituted a criminal prosecution based upon a debt scheduled in a bankruptcy proceeding.

As a general rule, strong policy considerations restrain a federal court from enjoining state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Matter of Davis*, 691 F.2d 176 (3d Cir.1982); *In re Barnette*, 673 F.2d 1250 (11th Cir.1982). The Bankruptcy Code itself reflects this restraint in Section 362. Once a bankruptcy petition is filed, Section 362 operates to protect a debtor from various acts by creditors. Section 362 does not, however, stay

"the commencement or continuation of a criminal action or proceeding against the debtor." After the debtor's bankruptcy discharge has entered, Section 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or any act to collect, recover or offset any debt that was discharged in the bankruptcy proceeding." A federal court should not enjoin a criminal prosecution merely because the proceeding is based upon a debt which was discharged in bankruptcy proceedings. *Matter of Davis, supra; In re Barnette, supra; contra, In re Brown*, 39 B.R. 820 (Bankr.M.D. Tenn.1984). As noted in *Davies* and *Barnette*, legitimate state interests may be vindicated by a state criminal prosecution, including protecting the integrity of commercial transactions.

Numerous federal courts have considered whether a federal court may enjoin state criminal proceedings prior to the sentencing of the debtor where the prosecution is based upon an obligation discharged or sought to be discharged in bankruptcy. In *Barnette*, the Eleventh Circuit considered a situation where a bankruptcy court had enjoined a state criminal prosecution before the debtor was tried and convicted and before the debtor had received his bankruptcy discharge. The *Barnette* opinion requires a debtor who contends that the state criminal proceeding is a subterfuge for the collection of a discharged debt to raise the matter as a defense in the course of the state court proceeding. *In re Barnette*, at p. 1252.

Other opinions have considered the limited circumstances under which a federal court may intervene in state criminal proceedings prior to the sentencing of the debtor. One line of cases allows a federal court to enjoin a criminal proceeding where the court finds that the complaining creditor's principal motivation for instituting the prosecution is the collection of a debt discharged or sought to be discharged in bankruptcy. *See, e.g., Taylor v. Widdowson*, 16 B.R. 323 (Bankr.D.Md.1981). A second line of cases holds that a federal

court may enjoin a state criminal proceeding "[i]f a state prosecution is brought in bad faith or for purposes of harassment." *Matter of Davis*, at p. 178.

In *Davis*, the bankruptcy court had enjoined the state criminal prosecution before the trial took place and before the debtors' bankruptcy discharge had entered. On appeal, the *Davis* case focused upon the prosecutor's conduct in bringing and continuing the proceeding. In finding that the prosecution was not continued in bad faith, *Davis* suggests circumstances where a debtor could show a bad faith prosecution:

> The Davises have made no showing that the Attorney· General had any reason to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or the complaining witnesses had insufficient evidence to support their allegations.

*Matter of Davis*, at p. 179.

 In the Court's opinion, *Davis* represents the better view for a number of reasons. First, *Davis* recognizes that a state criminal prosecution may vindicate a number of state interests and that a federal court cannot shield a debtor from a good faith criminal prosecution. Second, *Davis* recognizes that a bankruptcy court need not presume that a state court will ignore the protections provided to a debtor under the Bankruptcy Code. As noted in the *Barnette* decision, a federal court cannot enjoin a state court proceeding in good faith from imposing a fine or imprisonment on a debtor convicted of violating state criminal statutes. *In re Barnette*, at p. 1253. Absent a showing to the contrary, a federal court must presume that the state court will fashion a sentence which protects a debtor's right to discharge debts in a bankruptcy proceeding. Finally, *Davis* does not require a federal court to intervene in a state court proceeding unless a bad faith prosecution is shown. Accordingly, under *Davis* a federal court need not ignore an abuse of state court process, but may provide a debtor with affirmative relief where a bad faith prosecution exists. It appears to the Court that the bad faith requirement of *Davis* is parallel, if not identical, to the abuse of process ground for challenge set forth in *Barnette*.

 After a criminal prosecution has concluded, a federal court may enjoin the enforcement of the court's sentence where the sentence operates solely to collect a debt discharged in the bankruptcy proceeding or where the criminal proceeding was conducted in bad faith. However, a debtor convicted of violating a criminal statute can receive a sentence which includes a fine, imprisonment, or restrictive probation even where the conviction is based upon an obligation discharged by the debtor in bankruptcy. *In re Barnette, supra; United States v. Carson*, 669 F.2d 216 (5th Cir. 1982). Additionally, a debtor may be ordered to make restitution of a discharged debt where the restitution is ordered to punish the debtor and with the principal objective of rehabilitating the debtor. However, a debtor cannot be ordered to make restitution of a discharged debt where the principal aim of the restitution ordered is to compensate the affected creditor. *United States v. Carson, supra.*

The *Carson* opinion concerned an appeal from a United States District Court judge's sentencing of an individual convicted of making a false statement to a federally insured bank for the purposes of influencing a loan. Carson was sentenced to two years in prison, with six months to be served and the rest of his term suspended. The court placed Carson on parole for five years with the condition that restitution be made to the bank. In *Carson*, the court ordered the debtor to make restitution to the affected creditor only after a full trial and a sentencing hearing. Restitution was ordered in conjunction with other criminal penalties. On appeal, the debtor argued that he could not be required to make restitution to the bank because he had discharged the underlying debt in a bankruptcy proceeding where the bank had not objected to the dischargeability of its debt. The Fifth Circuit rejected this argument and specifically found that the lower court had ordered restitution to rehabilitate the

debtor. *United States v. Carson*, at p. 217. Undoubtedly, part of the rationale underlying the *Carson* decision concerned the fact that the district court judge had heard all of the admissible evidence and had determined that the debtor was guilty of the charged offense. Because the *Carson* court did not sentence the debtor until after a full trial, the debtor was afforded all of the protections of a criminal court proceeding, including the requirement that the prosecution prove its case beyond a reasonable doubt. There was no allegation in *Carson* that the criminal prosecution was brought or proceeded in bad faith.

■ On the facts presented in the instant case, the Court cannot find that the Cuyahoga County Court ordered restitution to rehabilitate the debtor. It appears to the Court that the debtor was ordered to make restitution to compensate Merit Brass for the insufficient funds check. A number of facts support this conclusion. First, the debtor was offered the option of making restitution as a condition of probation before any conviction and sentencing by the criminal court. The court, as indicated by the transcript dated November 29, 1983, accepted the plea bargain between the debtor and the Prosecutor without consideration of whether or not the debtor had any criminal record. The Cuyahoga County Court heard no evidence as to the facts surrounding the giving of the check, but instead acted solely upon the recommendation of the Prosecutor.

Additionally, the Court must acknowledge the circumstances facing the debtor when he agreed to make restitution. Mr. Allman is a Colorado resident charged with giving an insufficient funds check to an Ohio business. The costs to the debtor of defending against an out-of-state criminal proceeding, as shown in this case, are high. A criminal defendant faces the ever-present possibility that witnesses necessary for a satisfactory defense will not respond to foreign process. Such was the case here. The obstacles confronting such a defendant are substantial, particularly where, as in the present case, the debtor is a bankruptcy debtor with grave financial problems. A debtor facing criminal prosecution for passing a bad check is under tremendous pressure to agree to make restitution in exchange for probation or a withdrawal of the criminal charge. *See In re Whitaker*, 16 B.R. 917 (Bankr.M.D.Tenn. 1982). As noted in *Whitaker*, a debtor who is unable or unwilling to make restitution is generally precluded from making a plea bargain because his only options are to make restitution or face the criminal trial. Here, where he had presented a defense based upon his discharge in bankruptcy prior to the trial date and that defense had been rejected by the criminal court, Mr. Allman may well have concluded that he faced only the alternatives of making restitution to Merit Brass or going to jail.

The Court received no evidence that the Prosecutor recommended that the debtor make restitution to Merit Brass to rehabilitate the debtor. As noted earlier, the Cuyahoga County Court proceeding record does not indicate that the judge there made any independent determination that sentencing the debtor to make restitution to Merit Brass would act to rehabilitate the debtor. Accordingly, this Court will not permit the Prosecutor to make a motion for the Cuyahoga County Court to revoke the debtor's probation and sentence him to six months in jail for his failure to make restitution to Merit Brass. A motion may be made to vacate the previously entered plea, reinstate the indictment, and go to trial, if the Prosecutor deems such action to be appropriate.

As to the issue of bad faith, the Court cannot escape recognizing the facts underlying the criminal prosecution. There is no indication that the Prosecutor was informed at the time that the criminal action was instituted that the check may have been issued conditionally. Had the Prosecutor's office made extensive, subsequent investigation, it is difficult to believe that a criminal prosecution would have continued. The check itself was issued under dubious circumstances. The debtor had traveled to Cleveland only because Mr. Mehnert repre-

sented that he had located qualified buyers interested in purchasing all of B & A's inventory. Mr. Mehnert declined to disclose the identity of these buyers until the debtor gave Merit Brass a check for the full $14,000. The purported buyers did not purchase any of B & A's inventory and were not, in the debtor's opinion, qualified buyers. The testimony of both Mr. Buchholz and the debtor support the debtor's contention that the check was to be held until sufficient sales were made. In addition, the two letters sent by the debtor to Merit Brass and admitted into evidence indicate that the debtor continued to believe through late February of 1983 that Merit Brass would hold the check until some arrangement for payment could be made. Although Mr. Mehnert testified that he sent the debtor a letter demanding payment in December of 1982, no such letter was admitted into evidence and the debtor denied ever having received this correspondence. The debtor's testimony indicates that the check was issued conditionally, it was deposited for collection before the condition was met, and a demand for payment may not even have been made before the criminal proceeding was begun. Mr. Mehnert's testimony to the contrary is unsupported by any other evidence.

The Court received no testimony concerning the Prosecutor's investigation of this matter prior to the time that the plea bargain agreement was made. If an investigation did occur then based upon the conflicting evidence presented to this Court, it appears unlikely that the Prosecutor could have reasonably anticipated that the debtor would be convicted. Accordingly, the Prosecutor's plea bargain agreement with the debtor may have been based upon the possibility that a conviction was unlikely.

■■■ At various points in this proceeding, the defendants have contended that the debtor somehow committed fraud

upon the Ohio Court and upon this Court when he entered into the plea bargain agreement which he could not meet. The Court has already detailed the obstacles facing the debtor in the criminal proceeding. On the facts presented to this Court, it appears that the conduct of the Prosecutor in continuing the criminal action was questionable. Although the Prosecutor's actions in obtaining the indictment against the debtor may have been precipitous, the continuation of the action under the facts of this case approaches bad faith. As noted in the *Davis* opinion, bad faith may be shown where a prosecuting attorney has reason to doubt the validity of the charges, fails to exercise independent judgment in continuing the prosecution, or where the complaining witness has insufficient evidence to support his allegations. *Matter of Davis*, at p. 179. Each of these factors was suggested in evidence presented to the Court. Additionally, this Court is not confronted with the situation presented in *Barnette*. The debtor here is not asking the Court to speculate as to the sentence to be imposed by the Cuyahoga County Court, but is requesting this Court's review of a sentence requiring restitution of a discharged debt. However, because the Court received insufficient evidence as to the Prosecutor's investigation activities, it will not enjoin further criminal proceedings in this matter so long as the prosecution continues in good faith.[1]

■■■ Finally, this Court must determine whether Merit Brass was in contempt of court when it filed a criminal complaint against the debtor and when the criminal proceeding continued after the debtor's discharge had entered. The simple answer is no. The testimony on behalf of Merit Brass that it did not receive notice of the debtor's Chapter 7 bankruptcy filing until after the criminal complaint was filed was not rebutted. At this point, according to

---

1. From the evidence before the Court, it appears that, had Merit Brass sought to have its debt determined to be nondischargeable in bankruptcy, it would have been unsuccessful. The mere issuance of an insufficient funds check does not automatically constitute fraud. *See In re Hunt,* 30 B.R. 425, 437 (Bankr.M.D.Tenn.1983). Where a debtor issues a check conditionally well after goods were obtained, the requisite fraudulent intent would not have been shown. 3 *Collier on Bankruptcy,* ¶ 523.08[4] at p. 523–44 (15th ed. 1984).

the evidence before the Court, the criminal prosecution proceeded independent of Merit Brass which apparently no longer had any say in the matter. Because this Court is not enjoining the continuation of Cuyahoga County Court proceeding insofar as the provisions of this Order are met, it is not proper to assess any costs or damages for contempt against Merit Brass. *See In re Redenbaugh*, 37 B.R. 383 (Bankr.C.D.Ill. 1984). Accordingly, the Court finds that Merit Brass was not in contempt of this Court and, therefore, the costs of the debtor's criminal defense cannot be charged against it based on a violation of this Court's discharge order.

ORDERED that the Cuyahoga County Prosecutor, John T. Corrigan or his successor, is permanently enjoined from making a motion to the Cuyahoga County Court to revoke the debtor's probation for failure to make restitution to Merit Brass as ordered by the Cuyahoga County Court on November 29, 1983.

FURTHER ORDERED that Storm Allman's motion for sanctions directed toward Merit Brass Company is denied.