Kent **MILNER** d/b/a **Belvedere Driving School** et al., Plaintiffs-Appellees,

v.

Colonel **R. H. BURSON,** Director of the **Georgia Department Public Safety,** et al., Defendants-Appellants.

No. 71–2853.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1972.

Rehearing Denied Jan. 5, 1973.

---

Arthur K. Bolton, Atty. Gen. of Georgia, Harold N. Hill, Jr., Executive Asst. Atty. Gen., Dorothy T. Beasley, Courtney Wilder Stanton, Asst. Attys. Gen., Atlanta, Ga., for Burson, Crowe and Pope.

Henry L. Bowden, John E. Dougherty, Atlanta, Ga., for Jenkins.

Hinson McAuliffe, Frank A. Bowers, James L. Webb, Atlanta, Ga., for McAuliffe.

Harry P. Hall, Jr., J. M. Crawford, Atlanta, Ga., for plaintiffs-appellees.

Before GEWIN, COLEMAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Plaintiffs-appellees brought this action seeking a declaratory judgment that portions of Georgia's Driver Training School License Act, Ga.Code Ann. § 92A–1101,[1] were unconstitutional. They

---

1. The pertinent sections of the Act are:

92A–1101. Definitions.—The following words and phrases when used in this Chapter shall, unless the content otherwise requires, have the meanings respectively ascribed to them in this section:

(a) "Motor vehicle": Every vehicle which is self-propelled upon or by which any person or property is or may be transported or drawn upon a public highway except devices used exclusively upon stationary rails or tracks.

(b) "Driver training schools": Any person, partnership or corporation giving driving instruction to 10 or more persons per calendar year for the purpose of meeting requirements for licensed driving of motor vehicles in Georgia.

(c) "Person": Every natural person, firm, copartnership, association, corporation, or school.

(d) "Department": The State Department of Public Safety acting directly or through its duly authorized officers and agents.

(e) "Driver's license examiners": Examiners appointed by the Department of Public Safety for the purpose of giving driver's license examinations.

92A–1102. Necessity for licenses.— No person shall operate a driver training school or engage in the business of giving instruction for hire in the driving

of motor vehicles or in the preparation of an applicant for examination given by driver's license examiners for a driver's license or permit, unless a license therefor has been secured from the department. (Acts 1968, pp. 436, 437.)

92A–1103. Qualifications of persons operating driving schools.—Every person in order to qualify to operate a driving school shall meet the following requirements:

(a) Be of good moral character.

(b) Maintain an established place of business to the public.

(c) Maintain bodily injury and property damage liability insurance on motor vehicles while used in driving instruction, insuring the liability of the driving school, the driving instructors and any person taking instruction in at least the following amounts: $100,000 for bodily injury to or death of one person in any one accident and, subject to said limit for one person, $200,000 for bodily injury to or death of two or more persons in any one accident and the amount of $20,000 for damage to property of others in any one accident. Evidence of such insurance coverage in the form of a certificate from the insurance carrier shall be filed with the department, and such certificate shall stipulate that the insurance shall not be cancelled except upon 10 days prior written notice to the department. Such insurance shall be written by a company authorized to do business in this State.

(d) Provide a continuous surety company bond in the principal sum of $2,-500 for the protection of the contractual rights of students in such form as will meet with the approval of the department and written by a company authorized to do business in this State. However, the aggregate liability of the surety for all breaches of the condition of the bond in no event shall exceed the principal sum of $2,500. The surety on any such bond may cancel such bond on giving 30 days notice thereof in writing to the department and shall be relieved of liability for any breach of any condition of the bond which occurs after the effective date of cancellation.

(e) Have the equipment necessary to the giving of proper instruction in the operation of motor vehicles as prescribed by the department.

(f) Pay to the department an application fee of $25.

92A–1104. Qualifications of instructors for driving schools.—Every person in order to qualify as instructor for a driving school shall meet the following requirements:

(a) Be of good moral character.

(b) Must present to the department evidence of credit in driver education and safety from an accredited college or university equivalent to credits in those subjects which are required of instructors in the public schools of Georgia.

(c) Be physically able to operate safely a motor vehicle and to instruct others in the operation of motor vehicles.

(d) Hold a valid driver's license.

(e) Pay to the department an application fee of $5.

92A–1105. Licenses; issuance; expiration; renewal.—(a) The department shall issue a license certificate to each applicant to conduct a driver training school or to each driver training instructor when the department is satisfied that such person has met the qualifications required under this Chapter.

(b) All outstanding licenses issued to any driver training school or driver training instructor pursuant to the provisions of this Chapter shall expire as a matter of law at midnight on September 30 of the calendar year for which the license was issued and must be renewed annually, unless sooner canceled, suspended or revoked under the provisions of section 92A–1107.

(c) The license of each driver training school and each driver training instructor may be renewed subject to the same conditions as the original license, and upon payment of the same fee.

(d) All applications for renewal of a driver training school license or driver training instructor's license shall be on a form prescribed by the department, and must be filed with the department not more than 60 days nor less than 10 days preceding the expiration date of the license to be renewed.

92A–1106. Department to prescribe rules and regulations.—The department is authorized to prescribe by rule standards for the eligibility, conduct, equipment, and operation of driver training schools and instructors and to adopt other reasonable rules and regulations to carry out the provisions of this Chapter.

92A–1107. Cancellation, suspension, or revocation of licenses.—The department may cancel, suspend, revoke, or refuse to renew any driver training school or driver training instructor's license, upon good cause being shown and after 10 days notice to the license holder:

(a) When the department is satisfied that the licensee fails to meet the re-

also sought temporary and permanent injunctive relief against the state officials responsible for enforcing this statute and the related criminal statute, Ga. Code Ann. § 92A–9926.[2] A three-judge district court was convened under 28 U.S.C. §§ 2281 and 2284. That court, 320 F.Supp. 706, issued a declaratory judgment holding the statute facially constitutional and, therefore, denied the requested injunctive relief. The court decided that the unconstitutional as applied allegations of the complaint did not have to be heard by a three-judge court and remanded that portion of the case to the district court. *See* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); McGuire v. Sadler, 337 F.2d 902 (5th Cir., 1964); 1A J. Moore, Federal Practice ¶ 0.205 at 2238 (2nd ed. 1965). The district court, 326 F.Supp. 1251, subsequently held that the statute was being applied in an unconstitutional manner. The court did not declare the statute unconstitutional however, but awarded injunctive relief by enjoining enforcement of the Act against plaintiffs and enjoining state officials from prosecuting plaintiffs for violations of the Act. The defendants have appealed.

We vacate the order of the district court and remand for re-consideration in light of the Supreme Court's decision in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[3]

The district court's injunction restrained "continued prosecutions of plaintiffs for violations of the Act under any citation heretofore issued since the filing of this action and while this court retains jurisdiction of this case." The court intended to retain jurisdiction "until such time as it shall appear to the court that the Act will not be enforced in a discriminatory manner." The injunction obviously encompassed pending as well as future prosecutions, thus raising the problems considered by the Supreme Court in *Younger* and by this court in Becker v.

---

quirements to receive or hold a license under this Chapter.

(b) Whenever the licensee fails to keep the records required herein.

(c) Whenever the licensee permits fraud or engages in fraudulent practices either with reference to the applicant or the department, or induces or countenances fraud or fraudulent practices on the part of any applicant for a driver's license or permit.

(d) Whenever the licensee fails to comply with any provision of this Chapter or any rules of the department made pursuant thereto.

(e) Whenever the licensee represents himself as an agent or employee of the department or license examiner or uses advertising designed to lead or which would reasonably have the effect of leading persons to believe that such licensee is in fact an employee or representative of the department or license examiner.

(f) Whenever the licensee or any employee or agent of the licensee solicits driver training or instruction in an office of any department of the State having to do with the administration of any law relating to motor vehicles.

(g) Whenever the licensee or any employee or agent, serving as a driver training instructor, has had his license canceled, suspended, or revoked.

. . . . .

92A–1109. Exemptions from Chapter. —This Chapter shall not apply to an accredited elementary school, secondary school, junior college or college conducting a driver training course, nor shall it apply to driver improvement schools operated by this State, a county or a municipality thereof. The constitutional attack was primarily directed at § 92A–1104(b) and § 92A–1109.

2. This statute reads as follows: 92A–9926. Violations of Chapter 92A–11, the Driver Training School License Act.—Any person violating any provision of Chapter 92A–11, which regulates driver training schools, shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor.

3. Five other cases were decided with *Younger*, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971).

Thompson, 459 F.2d 919 (5th Cir., 1972) [Tuttle, J., concurring in result].[4] Even though the district court considered *Younger*, it reasoned that: "No action taken by this court is in conflict with *Younger*. The jurisdiction of this court clearly attached several months prior to the institution of proceedings against these plaintiffs and the injunction today is merely in aid of the prior jurisdiction of the court." It appears that the district court was relying on the second exception to the anti-injunction statute, 28 U.S.C. § 2283, which allows a federal court to enjoin state court proceedings "where necessary in aid of its jurisdiction". However, before reaching the question whether it could act within an exception to § 2283, a federal district court is required by *Younger* to determine whether general equitable principles support its interference in state criminal prosecutions.[5] "*Younger, supra,* and its companion case, Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L.Ed.2d 688 (1971), established that federal intervention—by way of injunction or declaratory relief—in a state's enforcement of its criminal laws is improper unless the plaintiff can prove that the enforcement of those laws against him creates a threat to his federally protected rights as cannot be eliminated by the defense of a single state prosecution." Palaio v. McAuliffe, 466 F.2d 1230 (5th Cir., 1972). These principles are particularly relevant where, as in the case at bar, the statute had already been declared facially constitutional.[6] Before taking any action with respect to the allegations of unconstitutional application of the Act, the district court should have required plaintiffs to make a showing that the state court prosecutions were brought in bad faith or for the purposes of harassment. Hunt v. Rodriquez, 462 F.2d 659 (5th Cir., 1972); Shaw v. Garrison, 467 F.2d 113 (5th Cir., 1972). See Stewart v. Dameron, 448 F.2d 396 (5th Cir., 1971). Such a showing would establish the necessary irreparable injury, Shaw v. Garrison, *supra*. In order to justify federal intervention the court would next have to conclude that the irreparable injury thus established is "both great and immediate." Younger v. Harris, 401 U.S. at 46, 91 S.Ct. 746.[7] After this analytical process has been completed, the district court should consider whether its action is warranted under 28 U.S.C. § 2283. See Atlanta Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

The judgment of the district court is vacated and the case is remanded for proceedings consistent herewith.

4. The majority of the *Becker* panel held that "in preprosecution cases there must be a showing of bad faith harassment for the granting of declaratory as well as injunctive relief." Id. at 923. See Cooley v. Endictor, 458 F.2d 513 (5th Cir., 1972).

5. Mr. Justice Black completed his opinion for the Court in *Younger* by stating: "Because our holding rests on the absence of the factors necessary under equitable principles to justify federal intervention, we have no occasion to consider whether 28 U.S.C. § 2283, which prohibits an injunction against state court proceedings 'except as expressly authorized by Act of Congress' would in and of itself be controlling under the circumstances of this case." Id., 401 U.S. at 54, 91 S.Ct. at 755. See Dyson v. Stein, 401 U.S. 200, 203, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971).

6. The three-judge court which made this ruling acted prior to *Younger* and its companion cases.

7. The preceding textual discussion is, under the rationale of Becker v. Thompson, *supra*, equally applicable to a determination whether a federal court may enjoin imminent or threatened, as distinguished from pending, state criminal prosecutions.