In re FIRST TEXAS
PETROLEUM, INC., Debtor.

ENSTAR ENERGY, INC. and Ted A.
Rose, Plaintiffs,

v.

Cynthia Ruth ANDERTON, Richard
Anderton, and Dr. Fred G.
Popkess, Defendants.

Bankruptcy No. 382–01009 M–11.
Adv. No. 385–3461.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 23, 1985.

Kevin S. Wiley, Dallas, Tex., for plaintiffs.

Howard C. Rubin, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

Enstar Energy, Inc. ("Enstar") and Ted A. Rose ("Rose") (collectively referred to as "plaintiffs") sought a preliminary injunction from this court on June 19, 1985 seeking to enjoin Cynthia Ruth Anderton, Richard Anderton and Dr. Fred G. Popkess (collectively referred to as "defendants") from further participation in criminal proceedings instituted by the office of the Dallas County District Attorney (the

"D.A.") for violations of the Texas Securities Act and for securities fraud. The criminal prosecution resulted from complaints allegedly filed by defendants with the D.A.'s office. The plaintiffs requested that in the event their request was denied, that the court alternatively enjoin the defendants from receiving any restitution if it was part of a probated sentence. The court denied plaintiff's request for a preliminary injunction.

## DISCUSSION OF FACTS

An involuntary petition was filed against First Texas Petroleum, Inc. in early August, 1982 and the court entered an order of relief on August 24, 1982. On September 16, 1983, the court confirmed First Texas' proposed plan of liquidation. According to plaintiffs the liquidation plan provided for a sale of oil and gas leases to Enstar free and clear of prior liens and encumbrances, with those claims to attach to the sale proceeds. These leases were owned by various limited partnerships in which First Texas served as general partner. Apparently, the Andertons and Popkess were limited partners ("limiteds") in one or more of these ventures. The liquidation plan, according to the plaintiffs, failed to provide a full return to the limiteds on their initial investments.

Plaintiffs allege that the defendants filed the criminal complaint with the D.A. in bad faith. To support this allegation, plaintiffs cite to two statements allegedly made by the Andertons to the Vice-President of Enstar seven months prior to the court hearing on debtor's motion for confirmation of the reorganization plan, to wit, that the Andertons would have liked to be paid in full for their investment and that they were "coming after Ted Rose." The plaintiffs argue that the defendants' criminal action stems from the defendants' desire for one hundred percent return on the limiteds' investment. Plaintiffs also allege that defendants sought others similarly situated to file criminal complaints.

The plaintiffs next offer a statement by Rose's criminal counsel that the D.A. offered Rose an opportunity to plea bargain. The D.A. supposedly offered to recommend to the state court judge a ten-year sentence, hopefully to be probated, along with a fine and a payment of $287,000.00 to the Andertons and $160,000.00 to Popkess. It was unclear from the pleadings or the record whether other investors who allegedly had been defrauded were to be repaid. According to the plaintiffs' pleadings, the D.A.'s offer was contingent on Rose's acceptance of it by a certain date; Rose failed to accept the offer and accordingly, it is now officially unavailable. I will set aside for the moment the evidentiary difficulties plaintiffs might encounter in getting the D.A.'s alleged plea bargain offer to Rose's criminal counsel admitted into evidence and will view the statements in the light most favorable to the plaintiffs.

Plaintiffs have offered one final example of harrassment. Apparently, the D.A.'s office in preparation for trial sent Enstar a subpoena duces tecum seeking production of Enstar's business records. The subpoena was part of the D.A.'s discovery in the prosecution of the criminal charges. Enstar apparently did not seek a protective order from the state court judge, nor did it object to the subpoena, rather it chose to request injunctive relief from the Federal Courts to enjoin this alleged harrassment supposedly brought on by the criminal prosecution for securities fraud and blue sky violations.

Plaintiffs have not made the D.A. a party to this action nor have they asserted that the D.A., in prosecuting the case, is proceeding in bad faith. The plaintiffs have not alleged that the statutes from which the criminal action springs are guises for debt collection. Plaintiffs have not alleged that if the criminal prosecution proves meritless they will be precluded from seeking civil remedies in state court (e.g. malicious prosecution action).

Taking the facts in the light most favorable to the plaintiffs, plaintiffs have not shown sufficient reason to grant injunctive relief and accordingly, their application for preliminary injunction was denied.

## DISCUSSION OF LAW

■ The Federal Courts do not possess general injunctive powers to enjoin state court proceedings except where expressly authorized by Congress. See, Anti-Injunction Act, 28 U.S.C. § 2283. Section 105 of the Bankruptcy Code (11 U.S.C. § 105) provides such express authorization. See, *Matter of Davis*, 691 F.2d 176, 177–78 (3rd Cir.1982); *Matter of Taylor*, 44 B.R. 548 (D.Md.1984); *see generally*, S.Rep. No. 95–984, 95th Cong. 2d Sess. *reprinted* in 1978 U.S.Code Cong. & Adm.News 5787, 5815.

In spite of this express authorization, Bankruptcy Courts have adhered to the strictures of the *"Younger* doctrine" which circumscribes the settings for properly enjoining state court criminal actions. Although the facts in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) revolved around a non-statutory exception, the principles enunciated in *Younger* have been applied in a variety of circumstances. *See generally, Matter of Davis*, 18 B.R. 701, 703 (D.Del.1982) (District Court's affirmance of Bankruptcy Court's refusal to enjoin any aspect of criminal prosecution for issuing checks with insufficient funds); Soifer and MacFill, *The Younger Doctrine: Reconstructing Reconstruction*, 55 Tex.L. Rev. 1141 (1977).

■ Section 105 does not give unfettered power to Bankruptcy Courts to enjoin state court actions. The majority in *Younger, supra*, recognized that federal law has always:

> [S]tressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. *In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient, unless it is "both great and immediate."* Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution could not by themselves be considered "irreparable" in the special legal sense of the term. Instead, the threat to

the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger, supra*, 401 U.S. at 46, 91 S.Ct. at 751, (emphasis added) (citations omitted). Other decisions cited also supporting this principle include: *Ex Parte Young*, 209 U.S. 123, 145–47, 28 S.Ct. 441, 447–49, 52 L.Ed. 714 (1908); *Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926); *Beal v. Missouri Pac. R. Co.*, 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. 577 (1941); *Watson v. Buck*, 313 U.S. 387, 400, 61 S.Ct. 962, 966, 85 L.Ed. 1416 (1941); *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1970); *Kugler v. Helfant*, 421 U.S. 117, 123, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975); *see also, Davis, supra*, 691 F.2d at 178; *Barnette v. Evans*, 673 F.2d 1250, 1251–52 (11th 1982); *In Re Cornmesser*, 1 B.R. 482, 483 (E.D.Tenn.1978).

■ The "Fifth Circuit has held that *Younger* requires a federal district court to determine whether general equitable principles support interference in state criminal prosecutions ..." *Barnette, supra*, quoting, *Milner v. Burson*, 470 F.2d 870, 874 (5th Cir.1972), *cert. denied*, 411 U.S. 981, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). While the Bankruptcy Court's power to enjoin inheres in an express statutory exemption, 11 U.S.C. § 105, the same caution observed by District Courts in weighing the equities is required of Bankruptcy Courts. *See, Barnette, supra*, 673 F.2d at 1252. Injunctive relief has depended traditionally on an affirmative finding on four basic criteria designed to determine whether circumstances warrant such a remedy. These include: (1) substantial probability that the movant will succeed on the merits of his claim; (2) substantial threat that the movant will suffer irreparable harm absent injunctive relief; (3) proof that the threatened injury to the movant clearly exceeds the potential harm to the non-movant from granting the requested relief; and (4) proof that the injunction does not disserve the public interest. *See, e.g., Placid Oil v.*

*U.S.*, 491 F.Supp. 895, 904 (D.C.Tex.1980); *Roberts v. Austin*, 632 F.2d 1202, 1207 (5th Cir.1980). Plaintiffs have failed to carry their burden of proof on any of the foregoing four criteria.

The plaintiffs have attempted to characterize the criminal prosecution as a subterfuge which allows defendants, as creditors, to circumvent the automatic stay under 11 U.S.C. § 362(a). The stay does not provide blanket protection. To the contrary, Congress limited the power in § 362(b) providing, *inter alia*, exceptions for both criminal prosecutions, § 362(b)(1), and state enforcement of its police or regulatory powers, § 362(b)(4). The policies underlying sections 362(a) and 362(b) may conflict and when the two provisions intersect, the court must determine whether criminal prosecution or police or regulatory powers serve as a guise for debt collection. The policy conflict between sections 362(a) and 362(b)(1) merits consideration.

The court in *In re Redenbaugh*, 37 B.R. 383, 385 (Bankr.C.D.Ill.1984) commented:

> The issue in this case pits strong policy considerations against each other. On one side is the pervasive philosophy and jurisdiction of the Bankruptcy Code buttressed by the Supremacy clause. *In Re Whitaker*, 16 B.R. 917, 920 (Bkrtcy.M.D. Tenn.1982). *In re Barnett*, 15 B.R. 504, 510 (Bkrtcy.D.Kan.1981). On the other side of the conflict are the concepts of comity and federalism, *In Re Barnett*, supra, at 508, *In re Taylor*, 16 B.R. 323,

326 (Bankr.D.Myld.1981), and the philosophy that federal courts are loath to enjoin a state court criminal proceeding. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Redenbaugh, supra,* 37 B.R. at 386.

A review of many of the cases analyzing the propriety of enjoining state criminal proceedings indicates the earlier cases decided under the Bankruptcy Code differed over whether to grant injunctive relief to the debtor and, if so, in what form.[1] *See e.g., In re Barnett*, 15 B.R. 504 (Bankr.D. Kan.1981), holding that Kansas statute, as enacted and applied, was a *de facto* attempt *via* county prosecutor to collect debts, contrary to 11 U.S.C. § 362(a)(2), thereby allowing state law to establish priority among creditors; *Cf., In re Davis*, 15 B.R. 442 (Bankr.D.Del.1981). (Court determined, on approximately the same date, that a statute similar to the one in *Barnett, supra,* did not warrant injunctive relief).

Those courts almost exclusively enjoining state criminal prosecutions of NSF or Worthless Check Statutes can be divided into roughly two categories: courts holding that the statute as applied provided restitution to creditors who were otherwise stayed under § 362(a) and courts ruling that the state criminal statute constituted *de facto* debt collection. Those courts holding the latter view enjoined the actual prosecution of the case while those holding the

---

1. (A) COURTS REFUSING TO ENJOIN STATE CRIMINAL ACTIONS
*Matter of Taylor*, 44 B.R. 548 (D.Md.1984); *In re C.H. Stuart, Inc.*, 12 B.R. 85 (Bankr.W.D.N. Y.1981); *In re Wagner*, 18 B.R. 339 (Bankr.W. D.Mo.1982); *Matter of Davis*, 691 F.2d 176 (3rd Cir.1982); *In re Guthrel*, 43 B.R. 4 (Bankr.E.D.Mo.1984); *In re Cornmesser*, 1 B.R. 482 (E.D.Tenn.1978); *Matter of Lare*, 24 B.R. 959 (Bankr.D.Md.1982); *Porter v. Gaston*, 462 F.Supp. 370 (E.D.Ark.1978); *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982); *In re Button*, 8 B.R. 692 (Bankr.W.D.N.Y.1981); *In re Trail West*, 17 B.R. 330 (Bankr.D.S.D.1982).
(B) COURTS ENJOINING RESTITUTION OF COMPLAINING CREDITOR
*In re Holder*, 26 B.R. 789 (Bkrtcy.M.D.Tenn. 1982); *In re Johnson*, 16 B.R. 211 (Bkrtcy.M. D.Fla.1981); *In re Barnett*, 15 B.R. 504

(Bkrtcy.D.Kan.1981); *In re Redenbaugh*, 37 B.R. 383 (Bkrtcy.C.D.Ill.1984); *In re Farrell*, 43 B.R. 115 (M.D.Tenn.1984); *In re Allman*, 43 B.R. 840 (Bankr.D.Col.1984).
(C) COURTS ENJOINING STATE COURT CRIMINAL PROSECUTION OR ENJOINING THE CREDITOR'S PARTICIPATION
*In re Lake*, 11 B.R. 202 (Bankr.S.D.Ohio 1981); *In re Penny*, 414 F.Supp. 1113 (W.D.N.C.1976); *In re Reid*, 9 B.R. 830 (Bkrtcy.M.D.Ala.1981); *In re James*, 10 B.R. 2 (Bankr.W.D.N.C.1980); *In re Caldwell*, 5 B.R. 740 (Bankr.W.D.Va. 1980); *In re Bray*, 12 B.R. 359 (Bkrtcy.M.D. Ala.1981); *In re Frank*, 19 B.R. 41 (Bkrtcy.E. D.Pa.1982); *In re Brown*, 39 B.R. 820 (Bankr. M.D.Tenn.1984); *In re Kaping*, 13 B.R. 621 (Bkrtcy.D.Ore.1981); *In re Whitaker*, 16 B.R. 917 (Bankr.M.D.Tenn.1982).

former view merely enjoined restitution of the complaining creditor.

The trend, however, appears to be toward stricter adherence to the requirements set out in *Younger, supra,* for enjoining criminal prosecutions.[2] Some courts currently granting injunctive relief appear to enjoin only restitution of the complainant creditor and then only after careful analysis of the facts in light of *Younger, supra,* and its progeny. *See, e.g., In re Allman,* 43 B.R. 840 (Bankr.D. Col.1984).

The plaintiffs have relied almost exclusively on *In re Ohio Waste,* 23 B.R. 59, 7 C.B.C.2d 401 (Bankr.S.D.Ohio 1982) to support their request for a preliminary injunction. Similar to the other cases discussed by plaintiffs, *Ohio Waste, supra,* involves a criminal prosecution for writing a check against insufficient funds. Aside from the serious factual differences which militate against expanding the holdings in those cases to cover the instant situation, those earlier cases which actually enjoined the criminal prosecution or the complaining creditor's participation in the prosecution have come under fire for overbreadth because the courts which enjoined the state court prosecution did so primarily because the complainant creditor's motives were improper.

*Ohio Waste, supra,* at the outset, presents completely different circumstances than the instant case. *Ohio Waste, supra,* and other cases ruling on NSF statutes involve criminal prosecution for failure to pay a specific debt . incurred by check. The restitutionary aspect of NSF or Worthless Check Statutes presents far more compelling circumstances for scrutiny by a bankruptcy court than criminal statutes enacted to prevent violations of blue sky laws and securities fraud. Assuming restitution is a condition of the sentence in the criminal case, it appears from the facts presented, viewing them in a light most favorable to the plaintiffs, that restitution of the defendants is a collateral result, rather than a purpose, of the criminal prosecution. Thus, application of the holding in *Ohio Waste, supra,* and other similar cases to the case at bar appears inappropriate.

The court in *Ohio Waste, supra,* focused primarily on the complaining creditor. The creditor had filed a criminal complaint against an officer of a corporation in Chapter 11 for issuing a check with insufficient funds and the court subsequently enjoined him from further prosecution of the criminal action. The creditor had engaged in an aggressive debt collection campaign, of which the criminal complaint was part and parcel.

The *Ohio Waste* opinion cited *In re Taylor,* 16 B.R. 323 (Bankr.D.Md.1982) to support its position. The opinion in *Taylor, supra* has often been cited for the proposition that a bankruptcy court should enjoin state criminal actions if the court found that the criminal charges had been filed by a creditor who was essentially seeking to satisfy his claim, until recently, when it was reversed by the district court. *See, Matter of Taylor,* 44 B.R. 548 (D.Md.1984).

Plaintiffs, therefore, are relying primarily on the approach taken by the court in *Ohio Waste, supra:* namely, to focus on the motives of the complainant creditors as the determinative issue. The plaintiffs' implicit reliance on the "principal motivation test" can be seen throughout their brief and complaint, both of which contain references to the motives of the defendants, to wit, that the defendants filed their criminal complaints to recoup their investments in spite of the Chapter 11 reorganization plan which did not fully compensate them. The plaintiffs alluded to statements alledgedly made by defendants during the bankruptcy negotiations to the effect that unless the reorganization plan fully compensated them for their losses, they would file criminal charges with the district attorney's office.

**2.** *In re HBG Servicenter,* 45 B.R. 668, 12 B.C.D. 740 (Bankr.E.D.N.Y.1985); *In re Goree,* 45 B.R. 704, 12 B.C.D. 746 (Bankr.W.D.Kan.1985); *ac-*

*cord In re Solar,* 44 B.R. 828, 12 B.C.D. 726 (Bankr.M.D.Fla.1984).

The plaintiffs have not alleged that the DA's independent investigation of the matter did not show prosecution to be justified on objective criteria. No claims have been made that the underlying criminal statutes are merely subterfuges for debt collection. Plaintiffs' approach has focused primarily on the motives of defendants in filing the complaint and whether those improper motives, standing alone, are sufficient to warrant an injunction.

Although the "principal motivation test" has been criticized in recent years, it was applied by numerous courts in the early years of the Bankruptcy Code. Judge Pusateri discussed the origination of the "principal motivation test" in his opinion in *In re Barnett, supra,* 15 B.R. at 509.

In *Perez [v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), the Supreme] [C]ourt held:

> We can no longer adhere to the aberrational doctrine of *Kesler [v. Dept. of Public Safety,* 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1942)] ... that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration.
>
> \*       \*       \*       \*       \*       \*
>
> ... (S)tate legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.

Id. at 651–52, 91 S.Ct. at 1712–13, 29 L.Ed.2d at 243–44.

After *Perez,* many courts have been presented with conflicts between NSF check prosecutions and either the Bankruptcy Act or Code. In *In re Penny,* 414 F.Supp. 1113 (W.D.N.C.1976), the district court said:

> (T)he effect of the [worthless check] proceeding is to put the bankrupt in the position of conflicting duties. On the one hand, the bankruptcy court will order him to pay only a fraction of the debt, if it is dischargeable. On the other hand, *the state court has ordered him to pay it all or go to jail.*

This is exactly the situation Rule 401, and the underlying statutes, were designed to prevent. If the criminal action is allowed to proceed, the jurisdiction and judgments of the bankruptcy court will be wholly frustrated. Id. at 1115. Since *Penny,* several courts have construed *Penny* to say the underlying motives of the complainant creditor and county attorney must be examined, and if these motives are to satisfy the debt, then the criminal proceeding must be enjoined as an attempt to enforce ... by indirection a debt which cannot be enforced directly at the State or Federal level. [Citations omitted] The problem with this approach is the creditor's motives are almost always to satisfy the debt owed to them ... While there is language in *Penny* justifying an inquiry into the motives, it appears the *Penny* court only mentioned the inquiry because of the unusual facts in that case ...

Many bankruptcy courts, subsequent to *Penny,* have utilized the "principal motivation test", and, upon determining that the complaining creditors were motivated by self interest, these courts have enjoined the state court criminal proceeding. One of the more often-cited cases, until recently, was *In re Taylor,* 16 B.R. 323 (Bankr.D. Md.1981) in which the Bankruptcy Court ruled:

> [w]hen it is clear that the principal motivation is neither punishment nor a sense of public duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the civil obligation, the Bankruptcy Court may properly enjoin criminal proceeding.

The Bankruptcy Court's opinion in *Taylor, supra,* was subsequently reversed by the District Court in *Matter of Taylor,* 44 B.R. 548 (D.C.1984). The District Court, in *Matter of Taylor, supra,* observed that the "principal motivation test" applied by the Bankruptcy Court in that case "does not supercede but must conform to the restrictions of *Younger*". 44 B.R. at 550. The District Court, in that case, cited to the

opinion in *Matter of Lare*, 24 B.R. 959 (D.Md.1982), in which the *Lare* court noted that "[t]he 'principal motivation' test adhered to by most of the bankruptcy courts is open to the criticism that it is contrary to the spirit, if not the precise holding, of *Younger* ..." *Lare, supra*, 24 B.R. at 961.

The district court in *Lare* advocated a "bad faith" test as opposed to the "principal motivation" test. See *Matter of Lare, supra*, at 962. These short hand terms, however, may confuse more than clarify. Replacing the terms "principal motivation" with "improper motives" and "bad faith" with "immediate irreparable harm" appears to be more appropriate, if not more accurate, nomenclature. The former test actually focuses on the motives of the individual filing the charges, while the latter focuses on the harm. The term "immediate irreparable harm" tracks language from *Younger, supra*, 401 U.S. at 46, 91 S.Ct. at 751.

The *Lare* court cited to the Eleventh Circuit's opinion in *Barnette, supra*, 673 F.2d at 1252, as an example of the "bad faith" or "immediate irreparable harm" standard. The *Barnette* court first analyzed whether the injury to the movant was immediate and determined that it was not. The Eleventh Circuit then analyzed whether the injunction was necessary to preserve a federally protected right, in short, whether the harm was irreparable. The *Barnette* court determined that the movant in that case had not raised the issue of whether he was precluded from asserting that the prosecution was merely a subterfuge for debt collection as a defense in the criminal trial. In the instant case, the plaintiffs have not shown nor attempted to show that the complaint itself was meritless or that the DA's efforts are merely to harass. More important, plaintiffs have not even claimed that they would be precluded from asserting as defenses in the criminal trial any rights they would have under federal law. *See Younger, supra*, 401 U.S. at 42–43, 91 S.Ct. at 749–50.[3]

Recently, courts have criticized the focus of earlier bankruptcy opinions on the motives of the complainant creditor. This trend more fully complies with the restrictions of *Younger, et al.* The "principal motivation" test falters for several reasons, the most obvious being its overly broad scope. Strictly observed, the "principal motivation" test could result in every criminal action involving a debtor being scrutinized by bankruptcy courts to determine if the prosecution resulted from improper motives of the complainant creditor. This type of examination fails to dispose of the threshold issues of whether there is an immediate and irreparable harm to federally protected rights.

■ The plaintiffs have also argued that the potential requirement in the probated sentence that the defendants receive restitution constitutes sufficient evidence for enjoining either the restitution of the defendants or the prosecution itself. While remuneration of the defendants might allow the defendants to receive more than they would have received had they merely participated in the bankruptcy proceedings and not filed a criminal complaint, the case law is clear that the restitution part of a criminal sentence, standing alone, does not constitute sufficient grounds to warrant injunctive relief. *See, U.S. v. Carson*, 669 F.2d 216 (5th Cir.1982).

In *Carson*, a federal district court convicted the defendant for making a false statement on a loan application. The court gave a probated sentence which required restitution of the bank as a condition of probation. The defendant appealed his criminal conviction arguing that the debt had been previously discharged by the bankruptcy court and that the bank's inaction during the pendency of the bankruptcy effectively estopped them from filing a criminal complaint. Moreover, the criminal prosecution resulted in a disproportionately

---

**3.** The *Younger* court noted that "[a] basic doctrine of equity jurisprudence is that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law ..."

larger payment being made to the bank than it would have otherwise received because the bank could not have filed a complaint pursuant to § 523 of the Bankruptcy Code after the discharge of the debtor. The Fifth Circuit overruled the defendant, however.

The *Carson* court recognized:

[I]f the principal aim of the probation condition were to make the [creditor] whole, this argument might have some appeal. In fact, though, while recompense to the victim is a usually laudable consequence of restitution, the focus of any probation regimen is on the offender. The order of probation is 'an authorized mode of mild and ambulatory punishment ... intended as a reforming discipline.'

*Carson, supra,* 669 F.2d at 217 (citations omitted).

The Eleventh Circuit in *Barnette* noted:

[i]f restitution of a debt discharged in bankruptcy may be imposed as a part of a federal sentence, certainly such restitution may also be imposed by state courts. No federal right of the debtor is impinged, whether restitution is discretionary or mandatory.

*Barnette, supra,* at 1252.

Assuming restitution is ordered by the state court judge as a condition of probation, the plaintiffs have not shown that the state court judge should be enjoined from requiring restitution, or that the defendants should be enjoined from receiving restitution. As noted by *Barnette, supra,* neither federal nor state courts should be restricted in structuring a criminal sentence.

Even though restitution may allow a particular creditor to circumvent the bankruptcy court, bankruptcy courts should be cautious when enjoining state court criminal prosecution merely because restitution is a possible element of a possible sentence if a criminal defendant is convicted.

The plaintiffs' allegation that restitution may be imposed, assuming it is true, does not warrant a preliminary injunction of the criminal proceedings. *See, McDonald v. Burrows,* 731 F.2d 294, 299 (5th Cir.1984). The plaintiffs have failed to show that the state court's requirement of restitution would be for compensation rather than rehabilitation.

Assuming all of plaintiffs' allegations are true, plaintiffs have not shown sufficient grounds for an injunction of either the criminal action, itself, or of restitution of the defendants. Being forced to defend oneself in a criminal action has never constituted the irreparable and immediate harm contemplated by the *Younger* court. *See, Davis, supra,* 691 F.2d at 178; *see generally, Younger, supra,* 401 U.S. at 46, 91 S.Ct. at 751; *Watson v. Buck,* 313 U.S. 387, 400, 61 S.Ct. 962, 966, 85 L.Ed. 1416 (1941). The Bankruptcy Code does not provide a broad shield from criminal prosecution nor was that the Congressional intent when enacting the Code. *See, Barnette, supra,* 673 F.2d at 1251.

Plaintiffs failed to meet their burden of proof on their Complaint for a Preliminary Injunction, and, accordingly, their request was denied.