GOLDBERG, Circuit Judge:
William Fussell sold some cattle he had mortgaged and applied the proceeds to expenses and lease payments. He was indicted for hindering enforcement of a security interest. A few weeks later, Fussell filed a Chapter 7 proceeding. Contending that the prosecution was a bad-faith attempt to collect a debt dischargeable in bankruptcy, Fussell asked that the bankruptcy court enjoin the state criminal proceeding. The bankruptcy court denied the injunction and the district court affirmed.
We hold that a bankruptcy court may enjoin a state criminal proceeding only if the requisites of both Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the Anti-Injunction Act, 28 U.S.C. § 2283, are met. Among these requirements are that the debtor identify a federally protected right threatened by the prosecution. Our precedent establishes that a debtor does not have a federal right to prevent a criminal court from requiring that he repay debts that are the subject of *714 his bankruptcy proceedings; also, the prosecution at issue here is not motivated by the sort of bad faith that our precedent condemns. Accordingly, we find that Fus-sell has failed to meet the exacting standard enunciated in Younger and we therefore AFFIRM.

Facts and Proceedings Below

Starting in 1982 or 1983, Fussell borrowed money from the Shelby County Savings Bank.[1] The loans, secured by land and cattle, served as operating capital for Fussell’s ranch. Fussell would fatten the cattle and sell them at the end of each operating year. Then, with the knowledge and consent of the Bank, he would divide the proceeds from the sale, using a portion of the money to purchase new cattle for the upcoming year, and the remainder as payments on the loans. Necessarily, there would be an interim period before the new cattle were purchased during which the loan would be collateralized in part by cash rather than cattle.
At some point, the Bank foreclosed on the loan. At the time this occurred, Fus-sell had sold all his cattle, and held only land whose value was inadequate to fully collateralize the loan. Although Fussell had applied some of the proceeds of the sale of the cattle to the loan, he applied a portion of the cash to ranch expenses and lease payments, as his longtime partner had failed to make certain payments owed to the partnership. The net result was that the loan was under-secured.
On July 23, 1988, Fussell was indicted in Shelby County under Tex. Penal Code Ann. §§ 32.33(b), (c) (Vernon 1989), which punish one who intentionally “hinder[s] enforcement of [a] security interest or lien.” The Shelby County District Attorney at the time was John Walker, later replaced by Karen Price. Assistant District Attorney Robert Allen Goodwin was assigned to the case. Fussell's defense attorney was William Barton. A few weeks after the indictment, on August 12, Fussell filed a Chapter 7 proceeding.
The crux of Fussell’s complaint is that the criminal prosecution is malicious, in that it is motivated by a desire to aid the Bank in collecting Fussell’s debt. Certain deposition testimony supports this view. For example, District Attorney Price testified that she would continue prosecution “until the money had been received." When Fussell satisfied the security agreement, Price “would consider dismissal.” Assistant District Attorney Goodwin testified that “he would have clearly indicated to” Fussell’s attorney that if the Bank withdrew the complaint, the DA’s office “would be happy not to open another file on it.” Asked whether this meant that the Bank’s withdrawal of the complaint would “essentially" result in the dismissal of the indictment, Goodwin answered “That’s correct.” Goodwin also testified that his office “might have” sent Fussell a letter telling him that if the Bank’s complaint was not resolved, it would probably be presented to the grand jury. He testified that restitution would “ordinarily” be required as part of a plea bargain, since a “collateral purpose” of plea negotiations is “to try to make the victim whole.”
Other testimony, however, indicates that the question of the District Attorney’s motivation was complex. When asked whether the purpose of the prosecution was “to obtain restitution for” the Bank or “to prosecute a criminal,” Goodwin answered “[Bjoth. Our primary purpose was to prosecute the criminal act, ... [b]ut ... restitution would be a collateral issue.”
The Bank’s attitude is also illustrated by the testimony. A Bank employee testified that a director and owner of the Bank told him to tell Fussell that unless Fussell signed a renewal note with a substantial down payment, the owner-director would see to it personally that Fussell was put in the penitentiary. The Bank employee also testified that the Bank’s directors felt that the prosecution could be used to pressure Fussell’s brother or mother into paying the debt.

*715
Standard of Review

We review findings of fact by the Bankruptcy and District courts under the clearly erroneous standard, and consider questions of law de novo. See In re Waller Creek, Ltd., 867 F.2d 228, 232 & n. 3 (5th Cir.1989).

Discussion

This appeal raises the question of whether a bankruptcy court should enjoin a state criminal prosecution premised on a debt owed by a bankrupt. This vexing issue has sharply divided bankruptcy courts in the various circuits, and, to a lesser extent, district courts and courts of appeal.[2] On the one hand, the Bankruptcy Code is intended to relieve the honest debt- or by “permit[ting] him to start afresh,” Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); on the other, States certainly have the right to punish economic crime involving debts. The procedural aspect of this issue is equally complex; although the Bankruptcy and Supremacy Clauses vest the Bankruptcy Code with a primacy over state law, it is beyond dispute that considerations of comity and equity militate against lightly enjoining a state criminal prosecution. See Kugler v. Helfant, 421 U.S. 117, 123, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975); Younger, 401 U.S. at 42-43, 91 S.Ct. at 749-750; Perez v. Ledesma, 401 U.S. 82, 84-85, 91 S.Ct. 674, 676-677, 27 L.Ed.2d 701 (1971); cf. 11 U.S.C. § 362(b)(1) (excluding criminal prosecutions from scope of automatic bankruptcy stay).
Against this backdrop, Fussell asks us to adopt the reasoning of In re Seidelman, 57 B.R. 149 (Bankr.D.Md.1986) and In re Dett-ler Farms, 58 B.R. 404 (Bankr.D.S.D.1986), cases from other circuits in which the bankruptcy courts granted the requested injunctions. However, bankruptcy courts in our circuit have not been so willing to enjoin state criminal proceedings. See In re Little Giant Mobile Homes, 60 B.R. 194 (Bankr.W.D.La.1986); In re First Texas Petroleum, supra. Further, our own precedent dictates a framework that precludes us from granting the requested injunction.
In contexts other than bankruptcy, this circuit has indicated that a federal court order enjoining á state criminal prosecution must pass two tests. Milner v. Burson, 470 F.2d 870, 874 (5th Cir.1972). First, the order must satisfy Younger, 401 U.S. at 43-46, 91 S.Ct. at 750-752, which permits a federal court to enjoin a state criminal prosecution only if 1) the party requesting the injunction is without adequate remedy at law; 2) the party stands to suffer “irreparable injury” that is “both great and immediate”; and 3) the threatened injury relates to his “federally protected rights ... [and] cannot be eliminated by his defense against a single criminal prosecution.” Additionally, Younger explains that although “bad faith, harassment, or other unusual circumstances” may justify an injunction, the mere “cost, anxiety, and inconvenience of having to defend against a single criminal prosecution” do not. Id. at 46, 54, 91 S.Ct. at 751, 755. Second, the Milner framework requires that the order fall within the scope of one of the exceptions enumerated in the Anti-Injunction Act, 28 U.S.C. § 2283,[3] which permits a federal court to enjoin a state court proceeding only where “expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.”
Although we have not had occasion to consider whether the Milner framework is *716 applicable to injunctions in the bankruptcy court, we readily conclude that it is. First, it is clear that Bankruptcy Code § 105 (11 U.S.C. § 105) is an “expressly authorized” exception to the Anti-Injunction Act,[4] so an injunction issued pursuant to § 105 satisfies the second part of the Milner test. The more substantive question is whether Younger is applicable to § 105 injunctions. Other circuits have held that it is, as have bankruptcy courts in our own circuit.[5] We agree, as we find nothing in the bankruptcy power that justifies disregarding the balancing of interests embodied in Younger. Accordingly, we hold that the Milner two-part framework is applicable to injunctions under § 105. See Barnette, 673 F.2d at 1252 (implying that Fifth Circuit precedent supports two-part framework in bankruptcy context).
Under this framework, Fussell’s complaint falls short of the strict requirements for the injunction he seeks. Younger instructs that the party requesting an injunction must identify a federal right endangered by the state prosecution. Fussell suggests two such rights. First, by complaining that the purpose of the prosecution is to compel restitution, he suggests a federal right to shield himself from state restitution orders under the federal bankruptcy umbrella. However, we have squarely held that a bankrupt “has no federal right to prevent the [state] courts from requiring him to repay debts that are the subject of his bankruptcy proceedings.” McDonald v. Burrows, 731 F.2d 294, 299 (5th Cir.1984) (citing United States v. Carson, 669 F.2d 216 (5th Cir.1982) and Barnette, 673 F.2d at 1252). Accordingly, under Younger, the possible imposition of such an order does not entitle Fussell to an injunction.
Second, Fussell argues that the prosecution was brought in bad faith, as "the only purpose of the criminal prosecution is to coerce repayment of the debt” (emphasis Fussell’s). It is true that “[t]here is a constitutional right to be free of bad faith prosecution.” Hand v. Gary, 838 F.2d 1420, 1424 (5th Cir.1988) (internal quotations omitted). Such prosecution “cause[s] sufficient irreparable harm to support federal injunction of a state prosecution.” Id. However, we do not agree with Fussell’s one-sided characterization of the motives of this prosecution. The evidence indicates that the purpose of the prosecution was both to prosecute a crime and make the victim whole. Further, the Supreme Court has defined a bad-faith prosecution as one that “has been brought without a reasonable expectation of obtaining a valid conviction.” Kugler, 421 U.S. at 126 n. 6, 95 S.Ct. at 1531 n. 6 (citing Perez, 401 U.S. at 85, 91 S.Ct. at 675); see also Hefner v. Alexander, 779 F.2d 277, 280 (5th Cir.1985) (“ ‘bad faith’ exception is narrow and should be granted parsimoniously”). Fus-sell does not and could not contend that the prosecution here meets this criterion, as it is clear from the record that there are sufficient facts to justify a prosecution.[6]
Further, it is not clear that the prosecutor’s collateral desire to secure restitution for the Bank can properly be characterized as “bad faith.” The Supreme Court has indicated that it views restitution as primarily furthering the interests of the State:
Although restitution does resemble a judgment “for the benefit of” the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim’s injury, but on the *717 penal goals of the State and the situation of the defendant____
Because criminal proceedings focus on the State’s interests in rehabilitation and punishment, rather than the victim’s desire for compensation, we conclude that restitution orders imposed in such proceedings operate “for the benefit of” the State. Similarly, they are not assessed “for ... compensation” of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State.
Kelly v. Robinson, 479 U.S. 36, 52-53, 107 S.Ct. 353, 362-363, 93 L.Ed.2d 216 (1986) (footnote omitted; ellipsis in original) (discussing the dischargeability of restitution orders in bankruptcy).
At most, it seems to us that the coerciveness and “bad faith” Fussell complains of are inherent in a statute punishing economic crime between non-stranger parties. These fraud and fraud-like offenses — such as hindering a creditor or writing a check backed by insufficient funds — are nonviolent and have an impact focused disproportionately on the single party who voluntarily entered into a transaction with the offender. Thus, it is not surprising that a district attorney might be concerned in large part with making the victim whole, as the societal interest in such prosecutions is largely merged with the interest of the victim.[7] These considerations, combined with the victim’s inclination to withdraw the complaint if the debtor satisfies the debt, naturally result in coercive plea agreements in which the debtor avoids prosecution or imprisonment only by satisfying or reaffirming the debt. Thus, if we accept the validity of criminal statute at issue here, we are bound to accept a degree of coercion. As Fussell has not challenged the validity of the statute, this is an issue we do not consider.
Fussell makes an additional argument, outside the framework of Younger: he argues that permitting the criminal prosecution, which might ultimately result in restitution to the creditor, gives the Bank a preference over other creditors. Although essentially true, this argument is unavailing, as we have held that the fact that restitution effectively grants a preference is irrelevant. See United States v. Caddell, 830 F.2d 36, 39 (5th Cir.1987); cf. Kelly v. Robinson, 479 U.S. at 52-53, 107 S.Ct. at 362-363 (restitution orders are not dischargeable in bankruptcy). Furthermore, any restitution here would in part be merely a return to the status quo ante: Until Fussell sold the cattle and dissipated the proceeds, the Bank enjoyed a preference over unsecured creditors by virtue of its security interest. Restitution therefore merely restores, and perhaps enhances, a preference the Bank previously possessed.

Conclusion

Although Younger has carried us smoothly to our conclusion, we recognize the bumps in the road that have led other courts to find similar journeys more rocky. If any clear principle emerges from our decision, it is that a prosecutor’s restitu-tionary motives are not in themselves evil. More is required to secure the intervention of a federal court in state criminal proceedings. Although an egregious case might *718 have produced a different result,[8] we regard the situation here as an unobjectionable intersection of economics and criminal law.
For the reasons stated above, we AFFIRM.

. Fussell described his relationship with the Bank in uncontroverted testimony at the bankruptcy court hearing, and we adopt his account for the purposes of this opinion.

. See, e.g., In re First Texas Petroleum, 52 B.R. 322, 325 & n. 1 (Bankr.N.D.Tex.1985) (discussing policy considerations and collecting cases); In re Brinkman, 123 B.R. 318, 321 (Bankr.D. Minn.1991) (setting out related issues "frequently confuse[d]” by courts).
The criminal law is not the only point at which the Bankruptcy Code may clash with seemingly-unrelated state schemes. See, e.g., In re Sander-foot, 899 F.2d 598, 605 (7th Cir.), cert. granted, — U.S. —, 111 S.Ct. 507, 112 L.Ed.2d 519 (1990) (divorce law).

. The Anti-Injunction Act, 28 U.S.C. § 2283, provides:
A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

. See S.Rep. No. 989, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5815 (Section 105 "is also anauthorization [sic], as required under 28 U.S.C. 2283, for a court of the United States to stay the action of a State court”); In re First Texas Petroleum, 52 B.R. at 324; In re Davis, 691 F.2d 176, 177-78 (3d Cir.1982).

. See Barnette v. Evans, 673 F.2d 1250, 1251-52 (11th Cir.1982); Davis, 691 F.2d at 178 (Third Circuit); In re Little Giant Mobile Homes, 60 B.R. at 195; In re First Texas Petroleum, 52 B.R. at 324-29.

. We express no opinion, of course, as to Fus-sell’s guilt or innocence.

. As Assistant District Attorney Goodwin commented:
[ 0]n any type of economic crime, if the victim is satisfied, our policy pretty much was — you know, we are not looking for more files of that nature to open.
[ T]hat is a distinction that we make on economic type of crimes.... That would not necessarily be taken into account on any type of violent crime.
[ 0]ur philosophy was that a DWI, [for example], was a problem in and of itself, and not just a question of money changing hands. And it would have been viewed more harshly than the hindering a secured creditor situation.
[ T]here are some crimes ... that have a general abhorrent nature. And certainly, violent crimes and crimes that may be of a repetitive nature would be given priority____

. For example, our precedent would permit us to enjoin "a state prosecution undertaken in retaliation for or to deter the exercise of constitutionally protected rights," or one "undertaken under a valid statute for constitutionally impermissible reasons.” Wilson v. Thompson, 593 F.2d 1375, 1377, 1382 n. 7 (5th Cir.1979); see also Fitzgerald v. Peek, 636 F.2d 943, 945 (5th Cir.1981) (similar). Neither of these circumstances obtains in Fussell’s case.